**LAKEWAY LAND COMPANY, Appellant,**

v.

**Milton KIZER, Appellee.**

No. 3–89–142–CV.

Court of Appeals of Texas, Austin.

Sept. 19, 1990.

Rehearing Overruled Oct. 31, 1990.

Mike Willatt, Austin, for appellant.

Malcolm Greenstein, Greenstein & Kolker, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

CARROLL, Justice.

Appellee Milton Kizer sued Appellant Lakeway Land Development Company for age discrimination in connection with appellee's demotion and subsequent resignation. *See* Tex.Rev.Civ.Stat.Ann. art. 5221k (1987 & Supp.1990). After a jury found that appellant willfully discriminated against appellee, the trial court entered judgment in favor of appellee for back wages, liquidated damages, prejudgment interest, and attorney's fees. We will affirm the district court's judgment.

## BACKGROUND

In 1974, appellee began working for Lakeway Resort, maintaining the golf carts at the Live Oak Golf Course. Through 1982, appellee received numerous merit pay raises. By 1982, Lakeway Resort finished its third golf course; each course had its own separate cart maintenance facility. At that time, appellee was supervising the golf cart maintenance operations to some degree at all three courses.

Later in 1982, new Lakeway employee David McManus was placed in charge of the golf courses, and he proceeded to decentralize the supervision of the cart maintenance operations. McManus put appellee in charge of one of the three cart facilities and froze appellee's salary indefinitely. Leroy Haak, a long-time Lakeway employee, was placed in charge of the second cart facility; Roger Rodeman was given the third. McManus testified that about that time, he was not satisfied with appellee's performance: McManus had difficulty reaching appellee at times because he was golfing with club members during working hours; appellee failed to keep proper accounting records; and appellee had difficulty getting along with other employees.

In 1984, McManus reconsolidated the cart operations for the three courses and placed Roger Rodeman in charge. At the same time, appellee was demoted to cartman—a job involving the washing and preparation of the golf carts. His compensation was correspondingly reduced from approximately $8.35 per hour to $5.00 per hour. In addition, Rodeman was given responsibility over golf cart sales, thus taking away potential cart sale commission income from appellee. Leroy Haak, the other cart maintenance supervisor, was also demoted to cartman. Appellee and Haak were both substantially over the age

of forty-years old, and Rodeman was in his twenties.

Even though the decision had been made sometime earlier in 1983, the appellant waited until May of 1984, the day before appellee was scheduled to leave for a long-planned vacation, to inform appellee of the demotion. Upon returning from vacation, appellee went to his cart-shop office; Rodeman was sitting at his desk and had obviously taken over. Appellee then proceeded to the personnel office and resigned.

## APPELLANT'S CONTENTIONS ON APPEAL

In ten points of error, appellant attacks the form of the special issues submitted to the jury and the sufficiency of the evidence supporting the jury's findings. In points of error one, two, three, four, thirteen, and fourteen, appellant asserts that there was no evidence or, alternatively, insufficient evidence to support the jury's findings that appellant willfully discriminated against appellee because of his age, and that appellant was entitled to $78,660.00 for back wages. In points fifteen and sixteen, appellant challenges the district court's failure to limit recoverable back wages through the time period ending October 1986, instead of through the time of trial, March 1989. In points five and six, appellant contends that the district court erred when it failed to sustain appellant's objection to two jury charge instructions which provided that "it is unlawful for an employer to discriminate against an employee because of ... age," and that appellee "is not required to produce direct evidence of an unlawful motive...."

In six points of error, appellant challenges several district court evidentiary rulings. Appellant contends that the court erred in not allowing it to show its losses during the years that it was laying off employees; in sustaining the objection to appellant's question asking if appellee thought he was not selected as cart maintenance supervisor because of his age; in sustaining appellee's objection to appellant's question asking appellee whether he thought McManus' getting along with Rodeman better than with appellee was a valid reason for choosing Rodeman; in not allowing appellant to introduce any evidence concerning employee complaints against appellee; in sustaining appellee's objection to appellant's question asking appellee how he had spent his time since he resigned from his job; and in not allowing appellant to show that appellee receives a monthly Marine Corps pension.

## JURY FINDINGS

■ Appellant argues that there is no evidence or, alternatively, insufficient evidence to support the jury findings for three of the special issues submitted. When we analyze a "no evidence" point, this Court considers only the evidence that tends to support the finding. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex.1981). If there is more than a scintilla of evidence to support the jury finding, the legal insufficiency challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

■ When we review factual insufficiency points, we consider all of the evidence to determine whether the finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). This Court, however, is not a fact finder; we do not pass judgment upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence which could support a different conclusion. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

First, appellant challenges the jury finding that appellant discriminated against appellee because of his age. In connection with this issue, the court instructed the jury that they must first consider whether a prima facie case of discrimination had been proven: that appellee was between the ages of forty and seventy-years old; that an adverse employment decision was made that affected appellee; and that the position was given to a person under the age of forty-years. If the jury found that a prima facie case had been made, the jury

was instructed then to determine whether appellant had stated a legitimate nondiscriminatory reason for the employment decision. If the jury found that appellant stated a legitimate nondiscriminatory reason, they were to determine whether the reason proffered was a pretext for age discrimination. If the jury determined that appellant failed to state a legitimate business reason or if it stated a legitimate reason that was simply a pretext, the jury was instructed to conclude that appellee had been discriminated against because of age.

■ We conclude that there is more than a scintilla of evidence supporting the jury's finding of age discrimination, and that the jury's finding is not against the great weight and preponderance of the evidence. Appellant admits that appellee sufficiently established a prima facie case of age discrimination. We agree. However, appellant believes that it established a nondiscriminatory reason for appellee's demotion. In addition, appellant contends that there was no evidence or, alternatively, insufficient evidence to support the finding that the reason offered was not appellant's true reason, but instead was a pretext for discrimination.

The evidence shows that appellant was facing economic losses when it demoted appellee. McManus stated that he chose Rodeman, a person in his twenties, over appellee because Rodeman was a "better leader" and understood the administrative and financial operations very well.

Assuming the jury believed that these foregoing reasons were legitimate and nondiscriminatory, we conclude that the evidence supports a jury finding that these reasons were merely a pretext for discrimination against appellee. The record indicates that before McManus' arrival at the resort, appellee received a series of good employment evaluations and corresponding raises. Witnesses testified about appellee's and Haak's top quality work and about Rodeman's inadequate performance as supervisor of one of the cart maintenance operations. In addition, one of the witnesses, Darrell Riley, testified that after Rodeman took over as the unified cart maintenance supervisor he overheard Rodeman say, "we are going to have to do away with these . . . old and senile" men. Leroy Haak was fired soon thereafter.

Finally, the record shows that McManus terminated or demoted five men affiliated with the golf courses who served either in supervisory or professional capacities and who were over the age of forty. These five men, including appellee and Haak, were all replaced by men substantially under the age of forty. Appellee's brother, Edwin Kizer, successively serving as superintendent of each of the three courses, was replaced in turn as supervisor of each course by men in their twenties and early thirties. Edwin Kizer's assistant, Bill Farrell, the second oldest of fifteen or sixteen employees under Kizer, was replaced by a man in his late twenties. Finally, appellant fired Randy Petri, the oldest of the three full time golf pros.

With the aforementioned evidence in mind, we conclude that the record contains ample proof that indicates that appellant discriminated against appellee because of his age, and therefore, we will not disturb the jury's affirmative finding on special issue number one. *See Stafford,* 726 S.W.2d at 16; *In re King's Estate,* 244 S.W.2d at 661. Accordingly, we overrule points of error one and three.

■ Second, appellant challenges the sufficiency of the evidence supporting the jury's finding that appellant's discrimination against appellee was willful. In connection with this special issue, the jury was instructed that a violation is willful if the employer either knew or showed reckless disregard as to whether its conduct was prohibited by law; that a violation is willful if it is done voluntarily, deliberately, and intentionally and not by accident, inadvertence, or ordinary negligence; and that it was not necessary to find direct evidence of intent to discriminate in order to find that the violation was willful.

In 1983, appellant hired a consulting accountant to perform a management study of, among other things, the golf cart operations. The accountant talked to several

employees in connection with this assessment. Although appellee had the longest-term working knowledge of the cart operations and Haak was the second most experienced golf cart employee, neither were consulted or interviewed by appellant or the consultant with regard to the management-operations study. In addition, the cart operations consolidation and appellee's demotion had been under consideration for almost a year before appellee was told of the demotion; appellee was told on the eve of his long-planned vacation. McManus neither gave appellee a chance to discuss the change—promoting Rodeman and demoting appellee, nor did he attempt to explain to appellee why he made the change.

With these facts in mind, we are obligated to conclude that the jury's finding of willful discrimination was supported by sufficient evidence in the record. *See Stafford,* 726 S.W.2d at 16; *Cain,* 709 S.W.2d at 176; *In re King's Estate,* 244 S.W.2d at 661. Accordingly, we overrule points of error two and four.

Third, appellant argues that the evidence supporting the jury's award to appellee of $78,660.00 in back wages is both legally and factually insufficient. In addition, appellant argues that appellee could have mitigated his damages, if any, but he did not attempt to obtain another job.

In connection with this issue, the district judge instructed the jury that appellee is entitled to what he would have earned absent discrimination through the time of trial unless the jury determined that appellee failed to mitigate his damages. In that regard, the jury was instructed that appellee had the duty to mitigate his damages by seeking other employment, but he was not required to accept employment that was not of the same or similar type or that did not have comparable terms and benefits of employment comparable to those of appellant's.

■ We initially note that a defendant at the trial level who claims mitigation of damages has the burden not only to prove lack of diligence on the part of the plaintiff in seeking alternative employment but also to prove the amount by which damages

were increased by such failure to mitigate. *Cocke v. White,* 697 S.W.2d 739, 744 (Tex. App.1985, writ ref'd n.r.e.); *Hardison v. Beard,* 430 S.W.2d 53, 57 (Tex.Civ.App. 1968, writ ref'd n.r.e.).

■ Appellee testified on cross-examination that he unsuccessfully attempted to secure a new job at several other golf courses; but that even though he had numerous contacts in the golfing community, he was unable to secure a supervisory position with a golf course. In addition, he testified that he contacted a meat company and a house-siding company; he declined an offer to work for the siding company, as he did not believe they were "on the up and up."

Appellant's only response to this evidence took the form of a suggested inference that because appellee did not obtain a job, he did not look for a job. Appellant did not offer any affirmative evidence to support this inference. Appellee, however, admitted that he did not necessarily need to look for a new job because he had saved enough money for living expenses. Because we may not pass judgment upon the credibility of trial testimony, we must accept the jury's findings if supported by sufficient evidence. *Cain,* 709 S.W.2d at 176. Because appellant offered no contradictory evidence to challenge appellee's testimony with respect to his employment search, we are obligated to conclude that the record contains sufficient evidence supporting the jury's finding that appellee suffered damages in the amount of $78,660.00 in lost back wages. Accordingly, we overrule points of error thirteen and fourteen.

Finally, appellant argues that the trial court erred in not ruling that the evidence showed conclusively as a matter of law that the maximum amount that the jury could find in response to the special issue asking what sum appellee should recover for back wages was the amount appellee could have recovered through October 1986, as opposed to the time of trial, March 1989. Alternatively, appellant argues that the court erred in not ruling that the failure of the jury to limit appellee's back wages recoverable before October 1986

was contrary to the overwhelming weight and preponderance of the evidence.

Appellant contends that back wages cannot be recovered beyond the time that appellee would have been terminated for a nondiscriminatory reason. *See Hill v. Spiegel, Inc.,* 708 F.2d 233 (6th Cir.1983); *Sivell v. Conwed Corp.,* 666 F.Supp. 23 (D.Conn.1987). Appellant argues that had appellee been selected as the supervisor in 1984, his employment would have ended in October 1986 when appellant sold its golf cart operations.

■ Because the special issue in the charge did not instruct the jury to consider October 1986 as the cut-off date for lost back wages, we are interpreting these two points of error as challenges to the court's charge. Appellant did not object to the special issue or offer a limiting instruction at the time of trial. Apparently, the first time appellant argued that October 1986 should have been the cut-off date for consideration of lost back wages was in its motion for new trial.

In general, the court's charge should limit the jury's consideration of damages by an instruction on the proper legal measure. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.1973). Because appellant failed either to object to the charge on the grounds that it did not properly limit the jury's consideration of potential lost back wages to the time period before October 1986 or to offer a limiting instruction, appellant waived its opportunity to complain on appeal. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 n. 4 (Tex.1981); Tex.R.Civ.P.Ann. 274 (Supp. 1990). Accordingly, we overrule points of error fifteen and sixteen.

## OBJECTIONS TO THE CHARGE

In points of error five and six, appellant argues that the trial court erred in not sustaining its objections to two particular instructions in the special issue asking whether appellant discriminated against appellee. The first challenged instruction reads:

In connection with this issue, you are instructed that it is unlawful for an em-
ployer to discriminate against an employee because of that person's age.

The second challenged instruction reads:

Plaintiff is not required to produce direct evidence of unlawful motive. Discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts.

■ With regard to the first instruction, appellant failed to properly preserve his complaint for appellate review. We note that a party is confined to the jury-instruction objection made at trial; any variant complaint on appeal is waived. *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 820 (Tex.App.1987, writ ref'd n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *Taylor Publishing Co. v. Systems Marketing Inc.,* 686 S.W.2d 213, 218 (Tex.App.1984, writ ref'd n.r.e.); Tex.R.Civ.P.Ann. 274 (Supp.1990). In addition, the grounds underlying the trial objection must be stated specifically enough to support the conclusion that the district court was fully cognizant of the ground of the complaint and deliberately overruled it. *Anderson v. Higdon,* 695 S.W.2d 320, 325 (Tex.App.1985, writ ref'd n.r.e.).

Appellant asserts in his appellate argument that the instruction constituted a comment on the weight of the evidence that consequently and inappropriately incited an already inflamed jury. At trial, appellant stated:

We object to [the instruction] because it's not necessary for the decision of the jury. It's superfluous information and it's prejudicial because it implies comment on the charge, that's not necessary for the jury's decision.

We note that appellant's complaint on appeal is distinctly different from its trial objection.

Appellant's trial objection nebulously stated that the instruction would prejudice the jury because it was surplusage; it did not state that it was a comment on *the weight of the evidence* as appellant now argues on appeal, and it did not explain how it would have prejudiced the jury. In addition, we cannot conclude that appellant

provided the district court with a specific enough objection such that the court might have been able to correct any possible error. Therefore, appellant waived its complaint challenging the first instruction. Accordingly, we overrule point of error five.

■ With regard to the second instruction that "discrimination ... is a fact which you may infer from the existence of other facts," we conclude that it was properly included in the jury charge. Appellant argues that it constituted a comment on the weight of the evidence, and that it was superfluous because it duplicates the circumstantial evidence instruction also provided in the jury charge.

As to the assertion that it was a comment on the weight of the evidence, appellant cites no express authority for this proposition, and we find none. With respect to the contention that the instruction was superfluous and, therefore, prejudicial, we hold to the contrary.

In support of its argument that the instruction was superfluous and, therefore, improper, appellant relies upon *Acord v. General Motors Corporation,* 669 S.W.2d 111, 116 (Tex.1984), and the cases following *Acord: Lemos v. Montez,* 680 S.W.2d 798, 801 (Tex.1984); *First Int'l Bank In San Antonio v. Roper Corp.,* 686 S.W.2d 602, 604 (Tex.1985); and *Wilson v. Kaufman & Broad Home Systems,* 728 S.W.2d 874, 875–876 (Tex.App.1987, writ ref'd n.r.e.). In these cases, the courts explicitly stated that a trial court commits error if it adds surplus instructions to the Texas Pattern Jury Charges in products liability cases and expressly approved the Texas Pattern Jury Charges for defective products cases and disallowed any other instructions.[1]

Here, the general definition of circumstantial evidence follows the Texas Pattern Jury Charges; this instruction is commonly included in all kinds of civil cases. There is, however, no standard Texas Pattern Jury Charge to guide the trial of an age discrimination case. Accordingly, we conclude that *Acord* and the cases that follow it are distinguishable and, therefore, not controlling.

The Texas Rules of Civil Procedure state that "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R.Civ.P.Ann. 277 (Supp.1990). The court is vested with broad discretion in determining which legally correct instructions are necessary and proper; the district court does not abuse its discretion unless appellant can show a denial of its rights as was reasonably calculated to cause and probably did cause rendition of an improper verdict. *Island Recreational Dev. Corp. v. Republic of Tex. Savings Assn.,* 710 S.W.2d 551, 555 (Tex.1986); *Royal Insurance Co. of America v. Goad,* 677 S.W.2d 795, 800–801 (Tex.App.1984, writ ref'd n.r. e.).

Appellant does not disagree that the instruction is a correct statement of the law. It does argue, without citing authority, that the "superfluous" instruction "indicated to the jury that a discrimination case did not require following the circumstantial evidence instruction, but could be decided on a lesser quantity of evidence because of its special nature." To the contrary, we believe that the instruction is a carefully worded directive that attempts to clarify the unique fact-finding analysis facing a jury in an age discrimination case. *See* Tex.R.Civ.P.Ann. 277 (Supp.1990); Devitt and Blackmar, *Federal Jury Practice and Instructions* § 106.02 (Supp.1990). Accordingly, we overrule appellant's sixth point of error.

## EVIDENTIARY OBJECTIONS

■ First, appellant complains that the district court erred by not allowing appellant to show its losses during the years in which it was laying off its employees. Appellant argues that it had a right to present this testimony to rebut appellee's allegations that appellant was a corporation making large profits, and to show why it had

---

1. We note that *Lemos* is not a products liability case, but instead a negligence case that involves the issue of "unavoidable accident." Nonetheless, *Lemos* relies on the rationale in *Acord,* 669 S.W.2d at 116. In addition both of the cases involve jury questions and instructions that have long been settled and are provided in the Texas Pattern Jury Charges.

laid off hundreds of employees from the time appellee quit until the time of trial. Appellant cites no legal authority to support its admissibility argument; therefore, it has waived its complaint on appeal. *See Rayburn v. Giles*, 182 S.W.2d 9 (Tex.Civ. App.1944, writ ref'd). Accordingly, we overrule appellant's seventh point of error.

Second, appellant contends that the district court erred in sustaining appellee's objections to appellant's questions asking appellee whether he thought McManus getting along with Rodeman better than with appellee was a valid reason for McManus selecting Rodeman over appellee and asking appellee if he thought he was not selected just because of his age. Appellant cites no legal authority for these challenges to the court's rulings. Thus, these appellate complaints are waived. *Id.* Accordingly, points of error eight and nine are overruled.

■ Third, appellant asserts that the district court erred in not allowing appellant to introduce any evidence concerning complaints against appellee with regard to his quality of work. Appellant waived error, if any, because it failed to offer the "excluded complaints" during the evidentiary portion of the trial.

Appellant claims that it was denied the right to introduce proof of complaints about appellee. Appellant points out that just before the evidentiary phase of the trial, the district court sustained appellee's motion in limine and ruled that appellant could not introduce evidence with respect to any Lakeway member's complaints about appellee's job performance. In addition, appellant notes that at the end of the trial it offered a bill of exceptions listing proof (persons and documents) that would have detailed complaints against appellee.[2]

To be entitled to complain on appeal, appellant must demonstrate that it offered the proof into evidence before the trier of fact, and that it obtained an adverse ruling from the court, even if the court sustained a motion in limine and appellant developed a bill of exceptions outside the hearing of the trier of fact. *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.*, 715 S.W.2d 658, 662–663 (Tex.App.1986, writ ref'd n.r. e.). Our review of the record reveals that during the trial appellant never attempted to introduce proof of the alleged complaints into evidence. Accordingly, we overrule appellant's tenth point of error.

Fourth, appellant asserts that the district court erred in sustaining appellee's objection to appellant's question asking appellee how he had spent his time since he resigned from his job in May 1989. Appellant's sole argument supporting its point of error is that the "trial court inexplicably sustained an objection to this question, thereby adding to the cumulative effect of the trial court's errors throughout the trial."

Because appellant failed to cite authority for its point challenging the district court's action, it has waived its complaint on appeal. *See Rayburn*, 182 S.W.2d 9. Accordingly, we overrule appellant's eleventh point of error.

Finally, appellant argues that the trial court erred in not allowing appellant to show that appellee receives a Marine Corps pension in excess of $1,300.00 per month. Appellant contends that when appellee was asked if he received a military pension, appellee objected, and the court sustained this objection. Our reading of the record partially contradicts this assessment; appellee answered "yes," without objection, when asked if he received a pension after leaving the marines in 1971. Later, the court did sustain an objection to the same question. Nonetheless, appellant could not have been prejudiced by this later objection, even if the court's subsequent ruling had been improper as the question had already been asked and answered without objection. *See* Tex.R.App.P.Ann. 81(b)(1) (Pamp.1990).

■ Appellant also challenges the court's ruling sustaining the appellee's ob-

---

**2.** We note that the record does not indicate the substance or character of the alleged com-

plaints.

jection to a question asking the amount of his pension. At trial, appellee argued that the jury should not be informed about the amount of the pension because of the collateral source rule. The theory behind the collateral source rule is that a "wrongdoer" should not benefit at trial by allowing it to inform the jury of the presence of insurance coverage, or the equivalent, independently procured by the injured party. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 935 (Tex.1985). The collateral source rule simply does not apply here as appellee's pension preexisted and was unrelated to the matter at issue in this case.

Nonetheless, appellant does not satisfactorily explain how the jury would have been aided by the knowledge of the specific dollar amount of the pension when it calculated damages. The jury was instructed that appellee was entitled to his full lost wages less the mitigation. The jury was further instructed that appellee was obligated to mitigate damages only by seeking other employment of the same character as that when he was employed by appellant.

Without citing authority, appellant argues that the amount of the pension necessarily bore upon appellee's willingness to seek new employment; therefore, the jury should have been able to consider the amount in determining whether appellee mitigated his damages. Taking such an argument to its logical conclusion, one also might argue that due to the amount of his pension, appellee should not have been allowed to sue appellant for discrimination because he might have been indifferent as to whether he was employed by appellant in the first place. Therefore, we conclude that the amount of the pension was not legally relevant to the jury's damages calculation. Accordingly, appellant's twelfth point of error is overruled.

Because we overrule all of appellant's points of error, we affirm the judgment of the district court.