TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00139-CV






Murray Watson, Jr.; Pecos Higher Education Authority; Brazos Higher Education


Authority; Texas Bond Review Board; George W. Bush, Rick Perry, Carole


Keeton Rylander, James E. "Pete" Laney, Board Members;


and Jim Buie, Executive Director, Appellants




v.




North Texas Higher Education Authority, Inc. and Panhandle-Plains Higher


Education Authority, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. GN0-00135, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING







 In this case, we consider whether the declaratory judgment provision of the
Administrative Procedure Act(1) authorizes a district court to exercise jurisdiction over appellees'(2)
challenge to the validity and applicability of the Texas Bond Review Board's rule 190.2(e) during
the 2000 school loan bond reservation process. Appellees filed a declaratory judgment action
against the Board(3) and the Pecos defendants(4) and sought to enjoin the Board temporarily from
issuing bond reservations for the 2000 bond reservation process. This is an accelerated,
interlocutory appeal of a denial of appellants' pleas to the jurisdiction and a temporary injunction. 
See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4), (8) (West 1997 & Supp. 2000); Tex. R.
App. P. 28.1. Because appellees satisfy the requirements of section 2001.038 of the APA, we
hold that the district court properly exercised its jurisdiction. We further conclude that the district
court did not abuse its discretion when it enjoined the 2000 bond reservation process. Although
we modify the temporary injunction in our opinion, we affirm both district court orders.


FACTUAL AND PROCEDURAL BACKGROUND

 The dollar amount of private activity bonds that a state may issue within any given
year is capped by a "state ceiling," which is established by section 146(d) of the Internal Revenue
Code. In Texas, this system is further governed by chapter 1372 of the Texas Government Code. 
Tex. Gov't Code §§ 1372.001-.072 (West 2000). Chapter 1372 designates eleven percent of the
state ceiling, which amounts to $105.5 million for the 2000 bond reservation process,(5) exclusively
for issuers of qualified school loan bonds. See id. § 1372.022.

 School loan bond amounts are reserved and allocated to higher education authorities
by the Board. See Tex. Gov't Code Ann. § 1372.033. The Board issues reservations and
allocates bond amounts annually subject to a statutory limit of $35 million per issuer. See id.
§ 1372.037(5). Due to these statutory limits, each applicant typically requests the maximum bond
amount. Given the percentage of the state ceiling available for school loan bonds, $105.5 million,
and the maximum limits imposed on each reservation, $35 million, only three higher education
authorities anticipate receiving a bond reservation in any given year even though Texas currently
has a total of seven authorities.

 Prior to 1997, a lottery system determined the order of issuances of bond
reservations.(6) In 1997, to ensure higher education authorities received bond reservations in a fair
and predictable manner, the Texas Legislature established a rotation system.(7) According to the
school loan allocation statute,(8) "the board shall grant reservations in that category in reverse order
of the date of the most recent closing of qualified student loan bonds by each issuer." Tex. Gov't
Code Ann. § 1372.033(a) (emphasis added). Thus, the most recent recipient of a bond reservation
holds the lowest priority to receive a reservation in the upcoming year. See id.

 Following the 1997 legislative session, the Board amended rule 190.2 to reflect the
shift from the lottery to the rotation system.(9) This administrative interpretation of the school loan
allocation statute included additional language addressing new issuers. See 22 Tex. Reg. 7025,
7026-27 (1997), adopted 22 Tex. Reg. 9895 (1997). Pecos, in October 1999, was the first new
issuer to apply; thus, the Board had no reason to apply rule 190.2(e) before the Legislature
recessed.

 In 1989, Watson created Pecos as a higher education authority. Before then,
Watson had submitted applications in the Board's school loan bond reservation process on behalf
of Brazos. Between March and May of 1989, Watson incorporated fourteen new higher education
authorities including Pecos. Although Watson received a charter for Pecos from the Secretary of
State in April 1989, all fourteen higher education authorities remained dormant until 1999.

 In 1999, when the Board commenced its annual process to issue school loan bond
reservations, Watson submitted applications for bond reservations on behalf of Pecos and Brazos. 
When ranking the applications, the Board viewed Pecos as a new issuer. Pursuant to rule
190.2(e), the Board assigned Pecos the first priority ranking. After the Board implemented the 
rotation system, the final order of bond applicants was as follows: (1) Pecos, (2) Central Texas,
(3) Greater Texas Student Loan Corporation, (4) North Texas, (5) Abilene, (6) Panhandle-Plains,
and (7) Brazos.

 Each applicant requested the maximum school loan bond reservation of $35 million. 
As of October 1999, the Board determined that reservations would be issued to the top three
rankings, which were Pecos, Central Texas, and Greater Texas Student Loan Corporation. 
Because Pecos received the first priority ranking due to its status as a new issuer, North Texas was
relegated to the fourth priority ranking and thus would not receive its anticipated bond reservation. 
Also, the entry of Pecos to the process prevented Panhandle-Plains from advancing as expected
under the school loan allocation statute.

 After negotiations between the parties failed to resolve the dispute, appellees filed
suit. In response, the Board filed a plea to the jurisdiction, asserting sovereign immunity; the
Pecos defendants filed a separate plea to the jurisdiction. The district court denied both pleas to
the jurisdiction and granted a temporary injunction in favor of appellees enjoining the Board from
issuing any bond reservations.

 Subsequently, appellees filed an emergency motion for a temporary injunction with
this Court seeking to enjoin an issuance of bond reservations threatened by the Board. We granted
appellees' motion, thereby prohibiting any issuance of bonds by the Board in the disputed 2000
bond reservation process. We first address whether the district court had jurisdiction to consider
this case.


DISCUSSION


Pleas to the Jurisdiction

 Standard of Review

 A challenge to subject matter jurisdiction raises a question of law; therefore, we are 
required to conduct a de novo review. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928
(Tex. 1998). When deciding whether the district court properly exercised jurisdiction, we
consider the factual allegations made in good faith by the plaintiff. See Brannon v. Pacific
Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949). These allegations are accepted as true
unless the defendant pleads and proves that they were made fraudulently to confer jurisdiction. 
See Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). Appellees'
pleadings have not been challenged as fraudulent. Consequently, we accept the allegations as true.

 Specifically, a plea to the jurisdiction contests the district court's authority to
consider a cause of action. See Tsumi, Inc. v. Texas Parks & Wildlife Dep't, 23 S.W.3d 58, 60
(Tex. App.--Austin 2000, pet. filed) (citing Amador v. San Antonio State Hosp., 993 S.W.2d 253,
254 (Tex. App.--San Antonio 1999, pet. denied), and State v. Benavides, 772 S.W.2d 271, 273
(Tex. App.--Corpus Christi 1989, writ denied)). The plaintiff bears the burden of alleging facts
to demonstrate the district court properly exercised its subject matter jurisdiction. See Texas Ass'n
of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Unless the face of the
petition affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe
the allegations in favor of jurisdiction. See Peek v. Equipment Servs. Co., 779 S.W.2d 802, 804
(Tex. 1989). Here, the district court determined that it had jurisdiction under Texas Government
Code section 2001.038.


 Section 2001.038 of the APA

 Appellants urge that there is no statutory or constitutional authority that enables
appellees to challenge the Board's decision to allocate a reservation to Pecos. However, the Board
concedes that the district court would have jurisdiction if the Board acted improperly. Appellees
rely predominantly on Texas Government Code section 2001.038(10) as a statutory basis for
jurisdiction.(11) 

 Texas Government Code section 2001.038 provides as follows: 


(a) The validity or applicability of a rule, including an emergency rule adopted
under Section 2001.034, may be determined in an action for declaratory
judgment if it is alleged that the rule or its threatened application interferes
with or impairs, or threatens to interfere with or impair, a legal right or
privilege of the plaintiff.



Tex. Gov't Code Ann. § 2001.038(a) (West 2000) (emphasis added). We have recognized that
section 2001.038 confers jurisdiction permitting judicial review of agency rules. See Texas
Alcoholic Beverage Comm'n v. Amusement & Music Operators, Inc., 997 S.W.2d 651, 655-56
(Tex. App.--Austin 1999, pet. dism'd w.o.j.); Railroad Comm'n v. ARCO Oil & Gas, 876
S.W.2d 473, 479 (Tex. App.--Austin Feb. 4, 1994, writ denied); Texas Dep't of Human Servs.
v. ARA Living Ctrs., 833 S.W.2d 689, 692-93 (Tex. App.--Austin 1992, writ denied);
Southwestern Bell Tel. v. Public Util. Comm'n of Tex., 735 S.W.2d 663, 669 (Tex. App.--Austin
1987, no writ).

 In Southwestern Bell Telephone we reviewed whether a district court had
jurisdiction under section 2001.038 to consider the validity of a Public Utility Commission rule.
Southwestern Bell Tel., 735 S.W.2d at 667. We described section 2001.038 as empowering
district courts in Travis County to determine "'[t]he validity or applicability of any rule.'" Id. at
669. We further opined that "[t]he jurisdiction given in [section 2001.038] . . . to the Travis
County district courts is an original jurisdiction not appellate jurisdiction." Id.(12) 

 Next, in ARA Living Centers we considered whether the district court had
jurisdiction under section 2001.038 to hear ARA's challenge to the validity of agency rules
promulgated by the Texas Department of Human Services and to the Department's attempts to
apply these rules to ARA. ARA Living Ctrs., 833 S.W.2d at 692-93. After disposing of the
Department's arguments concerning the exhaustion of administrative remedies, primary
jurisdiction, and governmental immunity doctrines, we concluded that section 2001.038 gave the
district court jurisdiction to hear ARA's request for declaratory relief. See id. at 693.

 Likewise, in ARCO Oil & Gas we discussed whether a district court had jurisdiction
under section 2001.038 to hear a challenge to a Railroad Commission rule seeking declaratory
relief. ARCO Oil & Gas, 876 S.W.2d at 477-78. Although our discussion focused on the doctrine
of primary jurisdiction, we also held that in the absence of that doctrine, section 2001.038
conferred jurisdiction on the district court. See id. at 479. Most recently, in Amusement & Music
Operators, Inc., we reiterated that section 2001.038 is a valid statutory basis for conferring
jurisdiction when the validity or application of an agency rule is challenged. Amusement & Music
Operators, Inc., 997 S.W.2d at 655-56, 659.

 The parties urge us to decide whether the Legislature has created a school bond
allocation system open to "all comers," as the Board and Pecos defendants contend, or a closed
system, as appellees argue. We decline to examine the merits of this action until the trial court
renders a judgment. Accordingly, we limit our discussion to a review of whether appellees satisfy
the requirements of section 2001.038.

 To establish jurisdiction under section 2001.038, a matter must concern the "validity
or applicability of a rule," which "interferes with or impairs, or threatens to interfere with or
impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West
2000). Appellants contend that this suit is not a rule challenge but rather an attempt to obtain a
judicial review of an agency decision. To support their position that this suit deals with an agency
decision, appellants rely on our opinions in Southwest Airlines Co. v. Texas High-Speed Rail
Authority and S.C. San Antonio, Inc. v. Texas Department of Human Services. Southwest Airlines
v. Texas High-Speed Rail Auth., 863 S.W.2d 123, 124 (Tex. App.--Austin 1993, writ denied); 
S.C. San Antonio, Inc. v. Texas Dep't of Human Servs., 891 S.W.2d 773, 774-75 (Tex.
App.--Austin 1995, writ denied). However, Southwest Airlines and S.C. San Antonio, Inc. are
inapposite to this case, because both cases involve judicial review of agency proceedings with
formal decisions. 

 Here, the record reveals no similar evidence of an agency proceeding or hearing
conducted by an agency examiner or an administrative law judge. Unlike the parties in Southwest
Airlines and S.C. San Antonio, Inc., the parties in this case have not engaged in discovery or
received a final agency order or a formal agency decision. We find that this case does not present
a question regarding an agency decision. Instead, we conclude the question before us concerns
a challenge to the validity and applicability of a Board rule.

 Appellants further contend that neither the Board's rules nor the Board's threatened
application of its rules affect a legal right or privilege of the appellees. Appellants assert
accurately that appellees' claim does not concern a constitutional or vested property right. Rather
appellees allege that a statutory right is affected. In particular, appellees argue that the school loan
allocation statute implicates a legal right or privilege. We agree.

 Statutes create legal rights. See Westerman v. Mims, 227 S.W. 178, 184 (Tex.
1921) (acknowledging that statutes "deal with legal obligations or duties and legal rights");
Gilmore v. Waples, 188 S.W. 1037, 1041 (Tex. 1916) ("[T]he rights created and protected by a
statute are legal, as distinguished from political, rights . . . ."). Once the Board accepted
appellees' applications for a bond reservation, appellees became qualified issuers who should have
been ranked according to the school loan allocation statute. This statute assigns priority rankings
in reverse chronological order.

 The Board concedes that "[w]ithout Pecos's application, North Texas would have
received a reservation in the 2000 bond reservation process." In effect, rule 190.2(e) and the
Board's application of that rule permitted a new issuer to receive the first priority ranking and
deprived appellees of a legal right or privilege, namely, their statutory right to be ranked in
reverse chronological order during the bond reservation process. Rather than being ranked third,
North Texas was ranked fourth due to Pecos's entry into the process. Similarly, Panhandle-Plains
will advance only two rankings rather than three because of the entry of Pecos. We conclude that
the Board's application of this rule satisfies section 2001.038, which requires the presence of
interference or impairment, or a threat of interference or impairment, with a legal right or
privilege of the appellees.

 The Pecos defendants further argue that section 2001.038 is inapplicable because
appellees have raised their challenge in an untimely manner. The Pecos defendants rely on dicta
in our prior opinions to support this contention. See Ford, Inc. v. Collins Ford, Inc., 912 S.W.2d
271, 275 (Tex. App.--Austin 1995, writ dism'd); Rutherford Oil Corp. v. General Land Office,
776 S.W.2d 232, 235 (Tex. App.--Austin 1989, no writ). We have stated previously that "[t]he
purpose of the statute is to obtain a final declaration of a rule's validity before the rule is applied." 
Ford, Inc., 912 S.W.2d at 275 (citing Rutherford Oil Corp. v. General Land Office, 776 S.W.2d
232, 235 (Tex. App.--Austin 1989, no writ)). Rutherford Oil, however, does not contain a timing
requirement, and we have not been cited to any case that does.

 Moreover, the plain language of section 2001.038 contemplates the use of this
provision to challenge the validity and applicability of a rule. See Tex. Gov't Code Ann.
§ 2001.038(a) (West 2000). No express language in section 2001.038 imposes a timing limitation
on invoking jurisdiction. See id.


 Sovereign Immunity

 The Board also argues that the doctrine of sovereign immunity prevents the district
court from exercising jurisdiction. We have previously held that section 2001.038 is "an express
waiver of governmental immunity from suit for an action that properly invokes that section." ARA
Living Ctrs., 833 S.W.2d at 693; accord Amusement & Music Operators, Inc., 997 S.W.2d at
659. The statute specifically provides, "The State agency must be made a party to the action." 
Tex. Gov't Code Ann. § 2001.038(c) (West 2000). Accordingly, we reject the argument that
sovereign immunity erects a jurisdictional bar and protects the Board from appellees' claims.

 We hold that appellees' suit satisfies the requirements of section 2001.038 and that
the district court properly exercised jurisdiction over this case. Accordingly, we overrule
appellants' first issue regarding jurisdiction.


Temporary Injunction

 Appellants' remaining issues concern the issuance of the temporary injunction.(13) 
A review of a district court's grant of a temporary injunction is strictly limited to whether the
court abused its discretion. See Davis v. Huey, 571 S.W.2d 859, 861-62 (Tex. 1978); State v.
Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975). When a court misapplies the law
or concludes that a probable right of recovery exists, which is not reasonably supported by the
evidence, the court commits an abuse of discretion. See Southwestern Bell Tel. Co., 526 S.W.2d
at 528. In an interlocutory appeal from a temporary injunction, we do not review the merits. See
Davis, 571 S.W.2d at 862; Amusement & Music Operators, Inc., 997 S.W.2d at 657-58.

 In a temporary injunction hearing, the sole question before the court is whether the
applicant is entitled to preserve the status quo of the subject matter of the suit pending trial. See
Davis, 571 S.W.2d at 862. Due to the limited purpose of such a hearing, a court may exercise
broad discretion when deciding whether to issue a temporary injunction. See LaFaucheur v.
Williams, 807 S.W.2d 20, 22 (Tex. App.--Austin 1991, no writ). We must determine whether
the court's decision was "'arbitrary, unreasonable, and without reference to guiding principles.'"
Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997) (quoting Mercedes-Benz Credit Corp. v.
Rhyne, 925 S.W.2d 664, 666 (Tex. 1996)). We may not substitute our judgment for that of the
trial court because the evidence at a preliminary hearing may not be the same as that developed
during a full trial on the merits. See Davis, 571 S.W.2d at 862 (relying on Houston Belt &
Terminal Ry. Co. v. Texas & New Orleans R.R. Co., 289 S.W.2d 217 (Tex. 1956), and Transport
Co. v. Robertson Transps., 261 S.W.2d 549 (Tex. 1953)).

 Appellants contend that the temporary injunction was improper because the Board
acted within the scope of its authority. Appellants also assert that during this process, every
application was properly considered and ranked by priority. As stated previously, we refrain from
considering the merits of this case.

 In addition, the Pecos defendants allege that the temporary injunction is improper
because appellees did not plead a cause of action and did not demonstrate a probable right of
recovery or a probable injury. Appellants further claim that the district court order and our order
issuing an injunction are defective because the scope of each order exceeds the pleadings and the
record.

 To grant a temporary injunction, a trial court must find that a plaintiff pleaded a
cause of action and asserted a probable right to recover as well as a probable injury. See Sun Oil
Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex. 1968); Amusement & Music Operators, Inc., 997
S.W.2d at 657 (citing Omniphone, Inc. v. Southwestern Bell Tel., 742 S.W.2d 523 (Tex.
App.--Austin 1987, no writ)). We first consider whether appellees pleaded a cause of action. In
this case, appellees seek declaratory relief on three grounds: (1) the Board violated section
1372.029 of the Texas Government Code and rule 190.3(g)(5), which prevent the Board from
accepting applications from more than one project located at, or related to, a business operation
at a program site in any given year; (2) Pecos and Brazos constitute a single business entity under
an alter ego or single business theory; and (3) the Board promulgated an invalid rule when it
interpreted the school loan allocation statute in rule 190.2(e). We have previously found that a
suit seeking a declaratory judgment pursuant to section 2001.038 satisfies the prerequisite that a
valid cause of action be asserted. See Amusement & Music Operators, Inc., 997 S.W.2d at 657. 
Therefore, we find appellees' requests for declaratory relief comply with this preliminary
requirement.(14) 

 We next consider whether these causes of action entitle appellees to relief. To
determine whether a probable right of recovery exists, we must examine rule 190.2(e) in light of
the school loan allocation statute. The Board is authorized to enact administrative rules "relating
to applications for review, the review process and reporting requirements." See Tex. Gov't Code
Ann. § 1231.022(1) (West 2000). The Board has promulgated rule 190.2(e), which reads as
follows:


Reservations shall be granted in reverse calendar year order of the most recent
closing of qualified student loan bonds by each issuer of qualified student loan
bonds . . . with the most recent closing being the last to receive a reservation and
with those higher education authorities that have never received a reservation for
student loan bonds being the first to receive a reservation, and, in the case of
closings occurring on the same date, reservations shall be granted in an order
determined by the board by lot.



34 Tex. Admin. Code § 190.2(e) (2000) (emphasis added). By its terms, rule 190.2(e) addresses
the priority ranking of new issuers.

 We note, however, that the "new issuer" language of rule 190.2(e) resembles the
Board's mortgage allocation statute(15) more closely than the school loan allocation statute. The
mortgage allocation statute specifically provides for new issuers as follows:


(c) Within the group of issuers given priority and within the group not given
priority, the board shall grant reservations in reverse order of the date of the
most recent closing of qualified mortgage bonds applicable to the housing
finance corporations, with a corporation that has never received a reservation
for mortgage revenue bonds being the first to receive a reservation and the
corporation that had the most recent closing being the last to receive a
reservation. If closings occurred on the same date, the board shall grant reservations in the order determined by the board by lot.



Tex. Gov't Code Ann. § 1372.032(c) (West 2000) (emphasis added). In contrast, the school loan
allocation statute states the following: 

If, on or before October 20, more than one issuer authorized by Section 53.47,
Education Code, to issue qualified student loan bonds applies for a reservation of
the state ceiling for qualified student loan bonds for the next program year, the
board shall grant reservations in that category in reverse order of the date of the
most recent closing of qualified student loan bonds by each issuer. The issuer
that had the most recent closing shall be the last to receive a reservation.



Id. § 1372.033(a) (emphasis added). Unlike rule 190.2(e) and the mortgage allocation statute, the
plain language of the school loan allocation statute does not address the priority ranking of new
issuers. The Board implemented rule 190.2(e) with respect to a new issuer for the first time in
October 1999. We conclude that the Board has not shown the existence of a "longstanding"
administrative policy and therefore, the theory of legislative acceptance or ratification may not
apply to these circumstances. We find the evidence sufficient to determine that the district court
reasonably concluded that a probable right to recover exists.

 The final requirement to support a temporary injunction, probable injury,
encompasses three factors: imminent harm, irreparable injury, and no adequate remedy at law for
damages. See Transport Co., 261 S.W.2d at 553. The record reflects that the Board threatened
to apply rule 190.2(e). As a result, the Board placed Pecos in the first priority position to receive
a reservation. This assignment of priority relegated North Texas to the fourth priority ranking. 
The Board's placement of Pecos in the first priority position also prevented Panhandle-Plains from
rotating up the priority rankings as it otherwise would have. We find that the record could
reasonably support the district court's determination that appellees faced imminent harm.

 Furthermore, the record indicates that the Board intends to continue to apply its
rules during subsequent bond reservation processes. Thus, neither North Texas nor Panhandle-Plains is able to discern when it may receive a bond reservation. The record reveals that bond
reservations are essential to appellees' ability to conduct business as well as provide services to
its clients. Also, the threatened inability to advance in priority ranking results in irreparable injury
to appellees. We conclude that the district court could have reasonably found that the record
supported a finding of irreparable injury.

 Lastly, we review whether appellees had an adequate remedy at law available that
would render the grant of injunctive relief improper. When a remedy is complete, practical, and
efficient to the prompt administration of justice, it is viewed as adequate. See Bank of Southwest
N.A., Brownsville v. Harlingen Nat'l Bank, 662 S.W.2d 113, 116 (Tex. App.--Corpus Christi
1983, no writ); Greater Houston Bank v. Conte, 641 S.W.2d 407, 410 (Tex. App.--Houston [14th
Dist.] 1982, no writ). Damages have been found inadequate when difficulty arises in calculating
damages or if an award arrives too late. See T-N-T Motorsports, Inc. v. Hennessey Motorsports,
Inc., 965 S.W.2d 18, 24 (Tex. App.--Houston [1st Dist.] 1998, no pet.); Bank of Southwest, 662
S.W.2d at 116. The loss of a bond reservation or ranking is difficult to quantify. Once a bond
reservation is issued, the bond amounts may not be recouped. We find no clear abuse of
discretion in the district court's ruling. Appellants' second issue is overruled.

 By its terms, the temporary injunction restrains the Pecos defendants from issuing
a bond reservation. At oral argument, appellees conceded that no reason exists for the continued
enforcement of either temporary injunction against the Pecos defendants. Therefore, we modify
the district court's temporary injunction and our order and writ of injunction dated March 6, 2000
to exclude the Pecos defendants.

 Although no longer enjoined, the Pecos defendants draw our attention to a clerical
error in the district court order and our order of March 6, 2000. Both orders refer to the "Fall
2000/Spring 2001 bond review reservation process," which constitutes an inaccurate description. 
"When the record reflects a clerical variance between a judgment announced in open court and the
judgment eventually signed by the trial judge, an appellate court can modify the judgment to
correct the mistake." McLendon v. McLendon, 847 S.W.2d 601, 610 (Tex. App.--Dallas 1992,
writ denied); cf. Tex. R. App. P. 43.2. In this case, the judge announced his judgment in open
court and considered all objections raised to the form submitted by appellees' counsel. Neither
appellants nor appellees referenced the "Fall 2000/Spring 2001 bond review reservation process"
in their pleadings or at the hearing. Rather, each party restricted its arguments to the most recent
Board bond reservation process in which applications were accepted in Fall 1999, and the Board
anticipated issuing reservations in Spring 2000. Because these discrepancies are clerical, we
modify the district court's temporary injunction to cover the "2000 Texas Bond Review Board
school loan bond reservation process," the time frame contemplated by all parties.

 Furthermore, on March 6, 2000, in response to an emergency motion for a
temporary injunction filed by appellees to halt the Board's threatened issuance of a bond
reservation, we issued an order and an accompanying writ of injunction. Our order also made
reference to the "Fall 2000/Spring 2001 bond review reservation process." Therefore, we also
modify our order of March 6, 2000 to refer to the"2000 Texas Bond Review Board school loan
bond reservation process."


CONCLUSION

 In light of our holding that the district court had jurisdiction to consider appellees'
claims under section 2001.038 of the APA, we affirm the district court's order denying appellants'
pleas to the jurisdiction. Because we hold that the district court did not abuse its discretion in
granting the temporary injunction, we affirm the temporary injunction as modified.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Modified and, as Modified, Affirmed 

Filed: October 19, 2000

Do Not Publish


1. Tex. Gov't Code Ann. § 2001.038 (West 2000) ("APA").
2. We refer to North Texas Higher Education Authority, Inc. ("North Texas") and Panhandle-Plains Higher Education Authority, Inc. ("Panhandle-Plains") collectively as "appellees." 
3. For convenience, we designate the State actors collectively as "the Board." This designation
refers to the Texas Bond Review Board and its members, George W. Bush, Rick Perry, Carole
Keeton Rylander, and James E. "Pete" Laney, and Jim Buie, Executive Director.
4. For ease of reference, we adopt the label "Pecos defendants," as used by appellants Murray
Watson, Jr. ("Watson"), Pecos Higher Education Authority ("Pecos") and Brazos Higher Education
Authority ("Brazos") to refer to themselves.
5. The "2000 bond reservation process" identifies the process that commenced in October 1999
when issuers submitted applications to the Board and would have resulted in issuances of bond
reservations in Spring, 2000.
6. See Act of May 29, 1995, 74th Leg., R.S., ch. 951, § 3, 1995 Tex. Gen. Laws 4739, 4740-41 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended). The method by which bond
amounts are reserved and allocated was changed by the Texas Legislature in 1997. See Act of
May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316, 5318-19. 
7. See Act of May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316,
5318-19 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended). 
8. Tex. Gov't Code Ann. § 1372.033 (West 2000). For convenience, we will refer to section
1372.033 as the "school loan allocation statute."
9. Prior to October 1999, this rule was codified as section 190.2(b)(3)(C). See 22 Tex. Reg.
7025, 7026-27 (1997), adopted 22 Tex. Reg. 9895 (1997) (codified at 34 Tex. Admin. Code
§ 190.2(e) (2000)). In October 1999, the Board adopted amendments to rule 190.2, which are not
relevant to this case. See 24 Tex. Reg. 8566, 8569 (1999) (to be codified as an amendment to 34
Tex. Admin. Code § 190.2(e)) (proposed July 9, 1999). For convenience, this opinion cites only
to the current codification of the provision.
10. Texas Government Code section 2001.038 was formerly referred to as section 12 of article
6252-13a of the Texas Civil Statutes. See Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 442
n.12 (Tex. 1994); compare Act of Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen.
Laws 583, 739 (Tex. Rev. Civ. Stat. art. 6252-13a, § 12, since amended), with Act of Apr. 3,
1975, 64th Leg., R.S., ch. 61, § 12, 1975 Tex. Gen. Laws 136, 141. Thus, references to section
12 in case law indicate the prior law, which was codified without substantive change. See Act of
Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 583 (Tex. Rev. Civ.
Stat. art. 6252-13a, § 12, since amended). For convenience, this opinion will reference section
2001.038 solely.
11. Alternatively, appellees argue that the Uniform Declaratory Judgments Act ("Act") provides
the district court with jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. ch. 37 (West 1997
& Supp. 2000). They also contend that case law supports the district court's jurisdiction. See
Cobb v. Harrington, 190 S.W.2d 709, 713-14 (Tex. 1945). The Texas Supreme Court has
interpreted the Act as "a procedural device for deciding cases already within a court's jurisdiction,"
which does not create jurisdiction. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 444 (Tex. 1993); Brinkley v. Texas Lottery Comm'n, 986 S.W.2d 764, 768 n.6 (Tex.
App.--Austin 1999, no pet.); Texas Comm'n of Licensing & Regulation v. Model Search Am.,
Inc., 953 S.W.2d 289, 290 (Tex. App.--Austin 1997, no writ). Because the discussion of
jurisdiction in Cobb v. Harrington is limited to the Uniform Declaratory Judgments Act, it fails
to provide a further basis for jurisdiction. See Cobb, 190 S.W.2d at 713-14. 
12. The provision restricts proper venue to Travis County district courts. See Tex. Gov't Code
Ann. § 2001.038(b) (West 2000).
13. The Pecos defendants present the issue of whether the trial court erred when it permitted
supplementation of the administrative record. However, because no argument or legal authority
to support its position is provided in their brief, this complaint is waived. See Tex. R. App. P.
38.1(h); Lakeway Land Co. v. Kizer, 796 S.W.2d 820, 827 (Tex. App.--Austin 1990, writ
denied).
14. Appellees further allege in their petition that because Pecos and Brazos are a single business
enterprise, the Board violated Texas Government Code section 1372.029 and rule 190.3(g)(5) of
the Texas Administrative Code when it accepted applications from both entities. Because of our
disposition of appellants' first issue, we need not decide this issue. 
15. Tex. Gov't Code Ann. § 1372.032(c) (West 2000). For convenience, we refer to section
1372.032(c) as the "mortgage allocation statute."


Authority ("Pecos") and Brazos Higher Education
Authority ("Brazos") to refer to themselves.
5. The "2000 bond reservation process" identifies the process that commenced in October 1999
when issuers submitted applications to the Board and would have resulted in issuances of bond
reservations in Spring, 2000.
6. See Act of May 29, 1995, 74th Leg., R.S., ch. 951, § 3, 1995 Tex. Gen. Laws 4739, 4740-41 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended). The method by which bond
amounts are reserved and allocated was changed by the Texas Legislature in 1997. See Act of
May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316, 5318-19. 
7. See Act of May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316,
5318-19 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended). 
8. Tex. Gov't Code Ann. § 1372.033 (West 2000). For convenience, we will refer to section
1372.033 as the "school loan allocation statute."
9. Prior to October 1999, this rule was codified as section 190.2(b)(3)(C). See 22 Tex. Reg.
7025, 7026-27 (1997), adopted 22 Tex. Reg. 9895 (1997) (codified at 34 Tex. Admin. Code
§ 190.2(e) (2000)). In October 1999, the Board adopted amendments to rule 190.2, which are not
relevant to this case. See 24 Tex. Reg. 8566, 8569 (1999) (to be codified as an amendment to 34
Tex. Admin. Code § 190.2(e)) (proposed July 9, 1999). For convenience, this opinion cites only
to the current codification of the provision.
10. Texas Government Code section 2001.038 was formerly referred to as section 12 of article
6252-13a of the Texas Civil Statutes. See Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 442
n.12 (Tex. 1994); compare Act of Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen.
Laws 583, 739 (Tex. Rev. Civ. Stat. art. 6252-13a, § 12, since amended), with Act of Apr. 3,
1975, 64th Leg., R.S., ch. 61, § 12, 1975 Tex. Gen. Laws 136, 141. Thus, references to section
12 in case law indicate the prior law, which was codified without substantive change. See Act of
Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 583 (Tex. Rev. Civ.
Stat. art. 6252-13a, § 12, since amended). For convenience, this opinion will reference section
2001.038 solely.
11. Alternatively, appellees argue that the Uniform Declaratory Judgments Act ("Act") provides
the district court with jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. ch. 37 (West 1997
& Supp. 2000). They also contend that case law supports the district court's jurisdiction. See
Cobb v. Harrington, 190 S.W.2d 709, 713-14 (Tex. 1945). The Texas Supreme Court has
interpreted the Act as "a procedural device for deciding cases already within a court's jurisdiction,"
which does not create jurisdiction. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d
440, 444 (Tex. 1993); Brinkley v. Texas Lottery Comm'n, 986 S.W.2d 764, 768 n.6 (Tex.
App.--Austin 1999, no pet.); Texas Comm'n of Licensing & Regulation v. Model Search Am.,
Inc., 953 S.W.2d 289, 290 (Tex. App.--Austin 1997, no writ). Because the discussion of
jurisdiction in Cobb v. Harrington is limited to the Uniform Declaratory Judgments Act, it fails
to provide a further basis for jurisdiction. See Cobb, 190 S.W.2d at 713-14. 
12. The provision restricts proper venue to Travis County district courts. See Tex. Gov't Code
Ann. § 2001.038(b) (West 2000).
13. The Pecos defendants present the issue of whether the trial court erred when it permitted
supplementation of the administrative record. However, because no argument or legal authority
to support its position is provided in their brief, this complaint is waived. See Tex. R. App. P.
38.1(h); Lakeway Land Co. v. Kizer, 796 S.W.2d 820, 827 (Tex. App.--Austin 1990, writ
denied).
14. Appellees further allege in their petition that because Pecos and Brazos are a single business
enterprise, the Board violated Texas Government Code section 1372.029 and rule 190.3(g)(5) of
the Texas Administrative Code when it accepted applications from both entities. Because of our
disposition of appellants' first issue, we need not decide this issue. 
15. Tex. Gov't Code