**TEXAS DEPARTMENT OF HUMAN SERVICES, Appellant,**

v.

**ARA LIVING CENTERS OF TEXAS, INC., Appellee.**

**No. 3–91–422–CV.**

Court of Appeals of Texas, Austin.

July 1, 1992.

Rehearing Overruled Aug. 26, 1992.

---

Dan Morales, Atty. Gen., Omar V. Guerrero, Asst. Atty. Gen., Austin, for appellant.

Phyllis B. Schunck, Clark, Thomas, Winters & Newton, Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

ARA Living Centers of Texas, Inc. (ARA), appellee, brought a declaratory-judgment action against the Texas Department of Human Services (TDHS), appellant, pursuant to section 12 of the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Pamph.1992). As a provider of nursing home services, ARA challenged the authority of TDHS to assess monetary penalties against it for alleged violations of state quality standards. The trial court granted ARA's motion for summary judgment. On appeal to this Court, TDHS asserts two points of error: (1) the trial court lacked jurisdiction over the cause; and (2) the trial court erred in its determination that TDHS was without authority to assess the mone-

tary penalties. We will affirm the judgment of the trial court.

## BACKGROUND

### 1. The Medicaid Program and Nursing Facility Quality Standards

The Medicaid program was created in 1965, when Congress added Title XIX to the Social Security Act (the "Act"). *See* 42 U.S.C.A. §§ 1396–1396u (1992). The purpose of Medicaid is to furnish medical assistance to qualifying individuals whose income and resources are insufficient to pay for necessary medical services. The federal government achieves this purpose by providing financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons.

Although participation in the Medicaid program is entirely optional, once a state elects to participate, as Texas has done, it must comply with the requirements of the Act or risk losing its federal financial assistance. Section 1396r of the Act requires that a state impose certain quality standards on nursing facilities in the state; these standards relate to such issues as provision of services and residents' rights. *See* 42 U.S.C.A. § 1396r(b), (c), (d) (1992). In 1989, therefore, the Texas legislature gave the following directive to TDHS and the Texas Department of Health:

The Texas Department of Health and the Texas Department of Human Services shall jointly develop one set of standards for nursing homes that applies to licensure and to certification for participation in the medical assistance program [Medicaid].... The standards must comply with federal regulations. If the federal regulations at the time of adoption are less stringent than the state standards, the departments shall retain and comply with the state standards. The departments by rule shall adopt the standards and any amendments to the standards. The Texas Department of Health shall maintain a set of standards for nursing homes that are licensed only.

1989 Tex.Gen.Laws, ch. 1085, § 8, at 4440. In response to this directive, TDHS and the Health Department jointly adopted a single set of quality standards to be applied to nursing facilities in Texas. *See* Long–Term Care Nursing Facility Requirements for Licensure and Medicaid Certification, Tex. Dep't of Human Servs., 40 Tex.Admin.Code §§ 19.1–.2107 (Supp.1991–92); *see also* Tex. Dep't of Health, 25 Tex.Admin.Code § 145.111 (Supp.1991–92). These quality standards and TDHS's attempted enforcement of them form the heart of the dispute in this cause.

### 2. The Present Case

The Texas legislature has designated TDHS as the state agency that is to cooperate with the federal government in the administration of the Medicaid program in Texas. *See* Tex.Hum.Res.Code Ann. §§ 22.002, 32.021(a) (1990). TDHS has the authority to provide Medicaid services directly or through contracts with private providers. Green Acres Convalescent Center ("Green Acres"), a nursing home in Vidor, Texas, is one of more than 100 nursing-care facilities in Texas operated by ARA.

On November 5, 1990, TDHS issued a letter informing the administrator of Green Acres that the facility was violating its Medicaid-provider agreement by failing to comply with state quality standards and, therefore, TDHS was assessing monetary penalties against it until compliance was obtained. ARA denied the alleged violations and requested an administrative hearing before TDHS to review the imposition of monetary penalties.

ARA also brought suit in district court for a declaratory judgment concerning TDHS's authority to assess monetary penalties for violations of the state's quality standards. The district court granted ARA's motion for summary judgment that TDHS lacked the authority to assess such penalties, and TDHS has appealed to this Court.

## JURISDICTION AND GOVERNMENTAL IMMUNITY

In its second point of error, TDHS argues that the trial court lacked jurisdiction to hear this cause because: (1) ARA failed

to exhaust administrative remedies before bringing suit for declaratory judgment; and (2) the doctrine of primary jurisdiction requires that the issue of TDHS's authority first be resolved in an administrative proceeding. TDHS also asserts that ARA's suit is barred by the doctrine of governmental immunity.

### 1. *Exhaustion of Administrative Remedies*

TDHS sought to impose monetary penalties against ARA pursuant to section 19.2012 of the Texas Administrative Code. Tex. Dep't of Human Servs., 40 Tex.Admin.Code § 19.2012 (Supp.1991–92). ARA responded first by requesting a hearing before TDHS concerning the validity of the alleged violations. ARA then filed a declaratory-judgment action challenging the validity of section 19.2012 on the ground that TDHS lacked statutory authority to assess monetary penalties for violations of nursing-facility standards. ARA brought its declaratory-judgment action pursuant to section 12 of APTRA, which provides:

> The validity or applicability of any rule, including an emergency rule adopted under Section 5(d) of this Act, may be determined in an action for declaratory judgment in a district court of Travis County, and not elsewhere, if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff.... *A declaratory judgment may be rendered whether the plaintiff has requested the agency to pass on the validity or applicability of the rule in question. However, no proceeding brought under this section may be used to delay or stay a hearing after notice of hearing has been given if a suspension, revocation, or cancellation of a license by an agency is at issue before the agency.*

Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 12 (Pamph.1992) (emphasis added).

TDHS concedes that section 12 permits a plaintiff challenging an agency rule to seek a declaratory judgment without first exhausting administrative remedies. TDHS argues, however, that section 12 does not allow the plaintiff to seek a declaratory judgment once an administrative appeal has been initiated. Because ARA requested an administrative hearing concerning the alleged violations, TDHS asserts that the district court lacked jurisdiction over the declaratory-judgment action. In other words, TDHS argues that once ARA elected to proceed under administrative remedies, it had to await the outcome of that proceeding before seeking a judicial determination. We disagree.

■ As stated above, ARA sought declaratory relief in district court on the ground that TDHS was acting without statutory authority. The Texas Supreme Court has held that an action for declaratory relief is permissible, even during the pendency of an administrative proceeding, when the issue is whether the agency is exercising authority beyond its statutorily conferred powers. *See City of Sherman v. Public Util. Comm'n*, 643 S.W.2d 681, 683 (Tex.1983). Further, the statutory language emphasized above clearly implies that section 12 permits a plaintiff to bring a declaratory-judgment action challenging the validity of an agency rule even after the initiation of administrative proceedings.[1] We hold that ARA's having requested an administrative hearing before TDHS did not preclude ARA from seeking declaratory relief pursuant to section 12.

■ TDHS also argues that ARA was not entitled to bring an action under section 12 because ARA failed to show that it would be irreparably harmed by awaiting final disposition by TDHS before seeking a judicial determination. This argument is without merit. There is no irreparable-harm requirement in section 12; all that is required is a "threatened application" of

---

1. We note that the record contains no evidence that ARA attempted to use its declaratory-judgment action to delay or stay any hearing before TDHS. No injunctive relief was granted to ARA until the district court determined that TDHS lacked authority to assess monetary penalties against ARA.

the challenged agency rule. Further, TDHS's reliance on *Rutherford Oil Corp. v. General Land Office*, 776 S.W.2d 232 (Tex.App.1989, no writ), as authority for its position is misplaced. Any irreparable-harm language in that opinion resulted from the specific issue presented in that case: whether the trial court had properly dissolved a temporary injunction. No temporary injunctive relief was granted in the present case. *Id.* at 234. We conclude that the fact that ARA arguably failed to show irreparable harm did not deprive the trial court of jurisdiction over ARA's section-12 suit or prevent it from granting the requested declaratory relief.

### 2. *Primary Jurisdiction*

TDHS also asserts that the trial court lacked jurisdiction over ARA's suit as a result of the doctrine of primary jurisdiction. This Court has previously discussed the nature and purpose of primary jurisdiction:

> Primary jurisdiction is the principle which determines whether the court or the agency should make the initial decision.... The doctrine of primary jurisdiction is sometimes confused with, but is distinguishable from, the concepts of exhaustion of administrative remedies and ripeness. Exhaustion and ripeness determine at what stage a party may secure a review of administrative action.... The purpose of the precept of primary jurisdiction is to assure that the administrative agency will not be bypassed in a matter *which has been especially committed to it by the legislature.*

*D & S Invs., Inc. v. Mouer*, 521 S.W.2d 118, 120 (Tex.Civ.App.1975, writ ref'd n.r.e.) (emphasis added) (citations omitted).

■ TDHS's reliance on the doctrine of primary jurisdiction is misplaced. This is not a case where we are asked to decide an issue that the legislature has especially committed to TDHS's expertise, such as a factual or technical issue; rather, this case presents the question of whether the legislature has committed a matter to the discretion of TDHS at all, a question calling essentially for a legal construction. In-deed, one recognized exception to the primary-jurisdiction doctrine is that a court may intervene in administrative proceedings when an agency is exercising authority beyond its statutorily conferred powers. *See Lake Country Estates, Inc. v. Toman*, 624 S.W.2d 677, 681 (Tex.App.1981, writ ref'd n.r.e.). Accordingly, without revisiting the issue of whether the primary-jurisdiction doctrine can *ever* apply in a proper section-12 case, we hold that it does not apply in the present case. *See generally* P.M. Schenkkan, *Declaratory Judgments Under APTRA § 12* in State Bar of Texas, Advanced Administrative Law Course C-13 to C-22 (1991).

### 3. *Governmental Immunity*

■ TDHS also argues that ARA's suit to obtain declaratory relief is barred by the doctrine of governmental immunity. This assertion is also without merit. The legislature has, in section 12, given express statutory authorization to bring an action such as the present one. Accordingly, section 12 represents an express waiver of governmental immunity from suit for an action that properly invokes that section of APTRA.

We conclude, therefore, that the trial court had jurisdiction to hear the present case and that it was not barred by the doctrine of governmental immunity.

### AUTHORITY TO IMPOSE MONETARY PENALTIES

As discussed above, the Act requires a state that is participating in the federal Medicaid program to impose certain quality standards on nursing facilities in that state. The Act also requires that a state provide, by statute or regulation, for the imposition of certain remedies, including monetary penalties, against nursing facilities that fail to comply with these standards. *See* 42 U.S.C.A. § 1396r(h)(2) (1992). If a state fails to comply with these requirements of the Act, the state may lose its federal financial assistance under the program.

As discussed above, TDHS and the Department of Health jointly adopted state quality standards to be applied to nursing

facilities in Texas. Included within these rules were provisions for remedies against nursing facilities that fail to comply with the quality standards. *See* 40 Tex.Admin.Code § 19.2012 (Supp.1991–92). In section 19.2012, TDHS purported to have and exercise the authority to assess monetary penalties against violators of state nursing-facility quality standards. It is this authority that ARA challenged in its declaratory-judgment action.

### 1. Statutory Authority

■ This Court has previously discussed the general authority of administrative agencies:

> It is axiomatic that such agencies are creatures of statute and have no inherent authority. They may, therefore, exercise only those specific powers conferred upon them by law in clear and express language, and no additional authority will be implied by judicial construction. However, with respect to *a* power specifically granted the agency, the full extent of *that* power must be ascertained with due regard for the rule that the Legislature generally intends that an agency should have by implication such authority as may be *necessary* to carry out the specific power delegated, in order that the statutory purpose might be achieved. Moreover, the Legislature impliedly intends, as a general rule, that an agency should have whatever power is *necessary* to fulfill a function or perform a duty placed expressly in the agency by the Legislature. The Legislature does not intend that agency functions be an exercise in futility....
>
> The agency may not, however, on a theory of necessary implication from a specific power, function, or duty expressly delegated, erect and exercise what really amounts to a new and additional power or one that contradicts the statute, no matter that the new power is viewed as being expedient for administrative purposes.

*Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137–38 (Tex.App.1986, writ ref'd n.r.e.) (emphasis in original) (citations omitted); *see also Texas Dep't of Human Servs. v. Christian Care Centers, Inc.,* 826 S.W.2d 715, 719–20 (Tex.App.1992, writ denied).

Before September 1, 1991, there was no state statutory provision that expressly gave TDHS the authority to assess monetary penalties against nursing facilities for violations of state and federal quality standards. *Compare* Tex.Hum.Res.Code Ann. § 32.021(a)–(c) (1990) *with* Tex.Hum.Res. Code Ann. § 32.021(d)–(g) (Supp.1992). Therefore, we must determine whether the legislature had, before that date, given TDHS implied authority to assess monetary penalties for quality-standard violations.

#### a. Arguments of TDHS

In support of its argument that it had implied statutory authority to assess monetary penalties against ARA before September 1, 1991, TDHS points to the fact that the Texas legislature has designated it as the state agency that is to cooperate with the federal government in the administration of the Medicaid program in Texas. *See* Tex.Hum.Res.Code Ann. § 22.002, 32.-021(a) (1990). The legislature provided that TDHS shall cooperate with the appropriate federal agencies "to the extent necessary to qualify for federal assistance for persons entitled to benefits under the federal Social Security Act." *See* § 22.002(b). Further, if TDHS

> determines that a provision of state welfare law conflicts with a provision of federal law, the department [TDHS] may promulgate policies and rules necessary to allow the state to receive and expend federal matching funds to the fullest extent possible in accordance with the federal statutes and the provisions of this title and the state constitution and within the limits of appropriated funds.

*See* § 22.002(d); *see also* § 32.002. TDHS argues that these provisions give it the specific authority to promulgate rules to ensure that Texas is in compliance with the Act in order to be entitled to federal financial assistance to the fullest extent possible under the Medicaid program. As discussed

above, section 1396r(h)(2) of the Act requires a state participating in the Medicaid program to provide for the imposition of remedies, including monetary penalties, against nursing facilities not in compliance with the quality standards. Therefore, TDHS argues that it has, by implication, the authority to impose such penalties because such authority is necessary for it to carry out a specific power delegated to it by the legislature: to ensure that Texas receives federal assistance under the Medicaid program to the fullest extent possible.

In further support of its position, TDHS points to other provisions of chapter 32 of the Human Resources Code. Under section 32.034, TDHS has the authority to cancel a nursing facility's Medicaid contract. *See* Tex.Hum.Res.Code Ann. § 32.-034 (1990).[2] Also, TDHS has the authority to assess monetary penalties against a person who engages in fraudulent Medicaid billing. *See* § 32.039. TDHS argues that these provisions indicate that the legislature has generally vested it with the authority to adjudicate contracts and impose monetary penalties.

Finally, as discussed above, effective September 1, 1991, the legislature amended sections 32.021 and 32.034 of the Human Resources Code to give TDHS the express authority to assess monetary penalties against nursing facilities that fail to comply with the established quality standards. TDHS argues that this action by the legislature was a ratification of a power enjoyed by TDHS since 1979 under sections 22.002 and 32.002. TDHS also argues that the amendment was merely a procedural change and should, therefore, be given retroactive effect.

b. Analysis

We disagree that TDHS's authority to promulgate policies and rules necessary to allow the State to receive and expend federal matching funds under Medicaid to the fullest extent possible provided it with im-plied authority to assess monetary penalties against ARA. Although section 1396r(h)(2) of the Act requires that a state provide, by statute or regulation, for the imposition of monetary penalties against nursing facilities that fail to comply with the established quality standards, that provision does not specify that any particular state agency be given the power to impose those penalties. *See* 42 U.S.C.A. § 1396r(h)(2) (1992). Which agency will be given such authority is a decision left to each state's legislature.

The Texas legislature has granted the Department of Health the express authority to impose monetary penalties against nursing homes that violate chapter 242 of the Health and Safety Code or a rule or order adopted under that chapter. *See* Tex.Health & Safety Code Ann. § 242.066 (Pamph.1992). As stated above, the Department of Health and TDHS jointly adopted quality standards to be applied to nursing homes in Texas for the purposes both of licensure and of Medicaid certification. These standards were adopted under chapter 242 of the Health and Safety Code. *See* 40 Tex.Admin.Code § 19.1 (Supp.1991–92); *see also* 25 Tex.Admin.Code § 145.111 (Supp.1991–92). Therefore, the Department of Health has express statutory authority to impose monetary penalties against a nursing home such as ARA if it is found to violate quality standards.

By expressly giving the Department of Health such authority, the legislature has satisfied the requirements of section 1396r(h)(2). As stated above, we may imply such authority on the part of TDHS only if such power is *necessary* for TDHS to carry out a specific authority granted to it by the Texas legislature. Because the Department of Health has been expressly granted the authority mandated by the Act, we conclude that it is not necessary, in order to assure compliance with the Act's requirements, that TDHS also have the same authority.

**2.** Effective September 1, 1991, the legislature amended section 32.034 to give TDHS express authority to impose monetary penalties for quality-standard violations. *See* Tex.Hum.Res. Code Ann. § 32.034 (Supp.1992).

We also find unpersuasive TDHS's argument that the legislature has generally vested TDHS with the authority to impose monetary penalties against nursing homes. Indeed, the fact that the legislature has limited TDHS's express authority to two instances, canceling a nursing home's Medicaid contract or imposing penalties for fraudulent billing, seems to militate against a conclusion that TDHS has a general power to impose monetary penalties.

Equally unpersuasive is the argument that the legislature somehow ratified an already existing power of TDHS by amending section 32.021 of the Human Resources Code, effective September 1, 1991, to give TDHS the express authority to impose monetary penalties against nursing homes for quality-standard violations. A close reading of that statute shows that the legislature made TDHS's authority to assess monetary penalties contingent on TDHS's taking certain actions, such as establishing a "penalties and sanctions advisory committee" to help develop and monitor an appropriate system for assessing penalties. *See* Tex.Hum.Res.Code Ann. § 32.021(d) (Supp. 1992). Therefore, we fail to see how the legislature could have been merely ratifying an existing power of TDHS, when it made an express grant of that power contingent on TDHS's satisfaction of certain prerequisites.

Finally, we are not persuaded by TDHS's argument that the legislative amendment to section 32.021 of the Human Resources Code should be given retroactive effect because it was merely procedural. A statutory change that gives an administrative agency a power that it did not enjoy prior to the amendment can hardly be said to be merely procedural. Further, the legislature gave no indication that the amendment was to be given retroactive effect.

We conclude, therefore, that TDHS did not have statutory authority to assess monetary penalties against ARA. The legislature expressly gave that power to the Department of Health; therefore, section 1396r(h)(2) of the Act was satisfied. Before September 1, 1991, the legislature had not given TDHS the express authority to impose such penalties, and TDHS has failed to establish that such a power was necessary to the fulfillment of its express statutory duties and powers.

## 2. Contractual Penalties

 TDHS argues that the contract between it and ARA was amended to include the quality standards contained in the administrative code. TDHS also argues that it had the authority to assess penalties against ARA for violations of these standards pursuant to the following provision in the Medicaid-provider contract between the two parties: "[T]he Department [TDHS] may withhold [Medicaid] payments, in whole or in part, if necessary because of irregularity(ies) or difference(s) from whatever cause until such irregularity(ies) or difference(s) can be adjusted." We disagree. TDHS cannot contract for authority it does not statutorily possess. *See Christian Care Centers*, 826 S.W.2d at 721. Further, the contractual provision on which TDHS relies allows payments to be withheld only until the irregularities or differences are adjusted; it provides no support for the permanent withholding of money as penalties.

## CONCLUSION

We conclude that the trial court properly exercised jurisdiction over this cause. We also conclude that TDHS lacked the statutory authority, either express or implied, to assess monetary penalties against ARA; such power was instead vested in the Department of Health. Finally, we conclude that the contract between TDHS and ARA provided no basis for the imposition of monetary penalties by TDHS against ARA. Accordingly, we overrule both points of error and affirm the judgment of the trial court.

KIDD, J., not participating.