# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00139-CV

**Murray Watson, Jr.; Pecos Higher Education Authority; Brazos Higher Education Authority; Texas Bond Review Board; George W. Bush, Rick Perry, Carole Keeton Rylander, James E. "Pete" Laney, Board Members; and Jim Buie, Executive Director, Appellants**

**v.**

**North Texas Higher Education Authority, Inc. and Panhandle-Plains Higher Education Authority, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. GN0-00135, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING

In this case, we consider whether the declaratory judgment provision of the Administrative Procedure Act[1] authorizes a district court to exercise jurisdiction over appellees'[2] challenge to the validity and applicability of the Texas Bond Review Board's rule 190.2(e) during the 2000 school loan bond reservation process. Appellees filed a declaratory judgment action against the

---

[1]   Tex. Gov't Code Ann. § 2001.038 (West 2000) ("APA").

[2]   We refer to North Texas Higher Education Authority, Inc. ("North Texas") and Panhandle-Plains Higher Education Authority, Inc. ("Panhandle-Plains") collectively as "appellees."

Board[3] and the Pecos defendants[4] and sought to enjoin the Board temporarily from issuing bond reservations for the 2000 bond reservation process. This is an accelerated, interlocutory appeal of a denial of appellants' pleas to the jurisdiction and a temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4), (8) (West 1997 & Supp. 2000); Tex. R. App. P. 28.1. Because appellees satisfy the requirements of section 2001.038 of the APA, we hold that the district court properly exercised its jurisdiction. We further conclude that the district court did not abuse its discretion when it enjoined the 2000 bond reservation process. Although we modify the temporary injunction in our opinion, we affirm both district court orders.

## FACTUAL AND PROCEDURAL BACKGROUND

The dollar amount of private activity bonds that a state may issue within any given year is capped by a "state ceiling," which is established by section 146(d) of the Internal Revenue Code. In Texas, this system is further governed by chapter 1372 of the Texas Government Code. Tex. Gov't Code §§ 1372.001-.072 (West 2000). Chapter 1372 designates eleven percent of the state ceiling, which amounts to $105.5 million for the 2000 bond reservation process,[5] exclusively for issuers of qualified school loan bonds. *See id.* § 1372.022.

---

[3] For convenience, we designate the State actors collectively as "the Board." This designation refers to the Texas Bond Review Board and its members, George W. Bush, Rick Perry, Carole Keeton Rylander, and James E. "Pete" Laney, and Jim Buie, Executive Director.

[4] For ease of reference, we adopt the label "Pecos defendants," as used by appellants Murray Watson, Jr. ("Watson"), Pecos Higher Education Authority ("Pecos") and Brazos Higher Education Authority ("Brazos") to refer to themselves.

[5] The "2000 bond reservation process" identifies the process that commenced in October 1999 when issuers submitted applications to the Board and would have resulted in issuances of bond reservations in Spring, 2000.

2

School loan bond amounts are reserved and allocated to higher education authorities by the Board. *See* Tex. Gov't Code Ann. § 1372.033. The Board issues reservations and allocates bond amounts annually subject to a statutory limit of $35 million per issuer. *See id.* § 1372.037(5). Due to these statutory limits, each applicant typically requests the maximum bond amount. Given the percentage of the state ceiling available for school loan bonds, $105.5 million, and the maximum limits imposed on each reservation, $35 million, only three higher education authorities anticipate receiving a bond reservation in any given year even though Texas currently has a total of seven authorities.

Prior to 1997, a lottery system determined the order of issuances of bond reservations.[6] In 1997, to ensure higher education authorities received bond reservations in a fair and predictable manner, the Texas Legislature established a rotation system.[7] According to the school loan allocation statute,[8] "the board shall grant reservations in that category in reverse order of the date of the most recent closing of qualified student loan bonds by each issuer." Tex. Gov't Code Ann. § 1372.033(a) (emphasis added). Thus, the most recent recipient of a bond reservation holds the lowest priority to receive a reservation in the upcoming year. *See id.*

---

[6]   *See* Act of May 29, 1995, 74th Leg., R.S., ch. 951, § 3, 1995 Tex. Gen. Laws 4739, 4740-41 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended). The method by which bond amounts are reserved and allocated was changed by the Texas Legislature in 1997. *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316, 5318-19.

[7]   *See* Act of May 29, 1997, 75th Leg., R.S., ch. 1420, § 3, 1997 Tex. Gen. Laws 5316, 5318-19 (Tex. Rev. Civ. Stat. Ann. art. 5190.9a, § 3, since amended).

[8]   Tex. Gov't Code Ann. § 1372.033 (West 2000). For convenience, we will refer to section 1372.033 as the "school loan allocation statute."

3

Following the 1997 legislative session, the Board amended rule 190.2 to reflect the shift from the lottery to the rotation system.[9] This administrative interpretation of the school loan allocation statute included additional language addressing new issuers. *See* 22 Tex. Reg. 7025, 7026-27 (1997), *adopted* 22 Tex. Reg. 9895 (1997). Pecos, in October 1999, was the first new issuer to apply; thus, the Board had no reason to apply rule 190.2(e) before the Legislature recessed.

In 1989, Watson created Pecos as a higher education authority. Before then, Watson had submitted applications in the Board's school loan bond reservation process on behalf of Brazos. Between March and May of 1989, Watson incorporated fourteen new higher education authorities including Pecos. Although Watson received a charter for Pecos from the Secretary of State in April 1989, all fourteen higher education authorities remained dormant until 1999.

In 1999, when the Board commenced its annual process to issue school loan bond reservations, Watson submitted applications for bond reservations on behalf of Pecos and Brazos. When ranking the applications, the Board viewed Pecos as a new issuer. Pursuant to rule 190.2(e), the Board assigned Pecos the first priority ranking. After the Board implemented the rotation system, the final order of bond applicants was as follows: (1) Pecos, (2) Central Texas, (3) Greater Texas Student Loan Corporation, (4) North Texas, (5) Abilene, (6) Panhandle-Plains, and (7) Brazos.

---

[9] Prior to October 1999, this rule was codified as section 190.2(b)(3)(C). *See* 22 Tex. Reg. 7025, 7026-27 (1997), *adopted* 22 Tex. Reg. 9895 (1997) (codified at 34 Tex. Admin. Code § 190.2(e) (2000)). In October 1999, the Board adopted amendments to rule 190.2, which are not relevant to this case. *See* 24 Tex. Reg. 8566, 8569 (1999) (to be codified as an amendment to 34 Tex. Admin. Code § 190.2(e)) (proposed July 9, 1999). For convenience, this opinion cites only to the current codification of the provision.

Each applicant requested the maximum school loan bond reservation of $35 million. As of October 1999, the Board determined that reservations would be issued to the top three rankings, which were Pecos, Central Texas, and Greater Texas Student Loan Corporation. Because Pecos received the first priority ranking due to its status as a new issuer, North Texas was relegated to the fourth priority ranking and thus would not receive its anticipated bond reservation. Also, the entry of Pecos to the process prevented Panhandle-Plains from advancing as expected under the school loan allocation statute.

After negotiations between the parties failed to resolve the dispute, appellees filed suit. In response, the Board filed a plea to the jurisdiction, asserting sovereign immunity; the Pecos defendants filed a separate plea to the jurisdiction. The district court denied both pleas to the jurisdiction and granted a temporary injunction in favor of appellees enjoining the Board from issuing any bond reservations.

Subsequently, appellees filed an emergency motion for a temporary injunction with this Court seeking to enjoin an issuance of bond reservations threatened by the Board. We granted appellees' motion, thereby prohibiting any issuance of bonds by the Board in the disputed 2000 bond reservation process. We first address whether the district court had jurisdiction to consider this case.

## DISCUSSION

### *Pleas to the Jurisdiction*

#### Standard of Review

A challenge to subject matter jurisdiction raises a question of law; therefore, we are required to conduct a *de novo* review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928

(Tex. 1998). When deciding whether the district court properly exercised jurisdiction, we consider the factual allegations made in good faith by the plaintiff. *See Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 469 (Tex. 1949). These allegations are accepted as true unless the defendant pleads and proves that they were made fraudulently to confer jurisdiction. *See Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996). Appellees' pleadings have not been challenged as fraudulent. Consequently, we accept the allegations as true.

Specifically, a plea to the jurisdiction contests the district court's authority to consider a cause of action. *See Tsumi, Inc. v. Texas Parks & Wildlife Dep't*, 23 S.W.3d 58, 60 (Tex. App.—Austin 2000, pet. filed) (citing *Amador v. San Antonio State Hosp.*, 993 S.W.2d 253, 254 (Tex. App.—San Antonio 1999, pet. denied), and *State v. Benavides*, 772 S.W.2d 271, 273 (Tex. App.—Corpus Christi 1989, writ denied)). The plaintiff bears the burden of alleging facts to demonstrate the district court properly exercised its subject matter jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the district court must liberally construe the allegations in favor of jurisdiction. *See Peek v. Equipment Servs. Co.*, 779 S.W.2d 802, 804 (Tex. 1989). Here, the district court determined that it had jurisdiction under Texas Government Code section 2001.038.

**Section 2001.038 of the APA**

Appellants urge that there is no statutory or constitutional authority that enables appellees to challenge the Board's decision to allocate a reservation to Pecos. However, the Board

6

concedes that the district court would have jurisdiction if the Board acted improperly. Appellees rely predominantly on Texas Government Code section 2001.038[10] as a statutory basis for jurisdiction.[11]

Texas Government Code section 2001.038 provides as follows:

(a) The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that *the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff*.

Tex. Gov't Code Ann. § 2001.038(a) (West 2000) (emphasis added). We have recognized that section 2001.038 confers jurisdiction permitting judicial review of agency rules. *See Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators, Inc.*, 997 S.W.2d 651, 655-56 (Tex. App.—Austin 1999, pet. dism'd w.o.j.); *Railroad Comm'n v. ARCO Oil & Gas*, 876 S.W.2d 473,

---

[10] Texas Government Code section 2001.038 was formerly referred to as section 12 of article 6252-13a of the Texas Civil Statutes. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 442 n.12 (Tex. 1994); *compare* Act of Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 739 (Tex. Rev. Civ. Stat. art. 6252-13a, § 12, since amended), *with* Act of Apr. 3, 1975, 64th Leg., R.S., ch. 61, § 12, 1975 Tex. Gen. Laws 136, 141. Thus, references to section 12 in case law indicate the prior law, which was codified without substantive change. *See* Act of Apr. 30, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 583 (Tex. Rev. Civ. Stat. art. 6252-13a, § 12, since amended). For convenience, this opinion will reference section 2001.038 solely.

[11] Alternatively, appellees argue that the Uniform Declaratory Judgments Act ("Act") provides the district court with jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 37 (West 1997 & Supp. 2000). They also contend that case law supports the district court's jurisdiction. *See Cobb v. Harrington,* 190 S.W.2d 709, 713-14 (Tex. 1945). The Texas Supreme Court has interpreted the Act as "a procedural device for deciding cases already within a court's jurisdiction," which does not create jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 768 n.6 (Tex. App.—Austin 1999, no pet.); *Texas Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 290 (Tex. App.—Austin 1997, no writ). Because the discussion of jurisdiction in *Cobb v. Harrington* is limited to the Uniform Declaratory Judgments Act, it fails to provide a further basis for jurisdiction. *See Cobb*, 190 S.W.2d at 713-14.

479 (Tex. App.—Austin Feb. 4, 1994, writ denied); *Texas Dep't of Human Servs. v. ARA Living Ctrs.*, 833 S.W.2d 689, 692-93 (Tex. App.—Austin 1992, writ denied); *Southwestern Bell Tel. v. Public Util. Comm'n of Tex.*, 735 S.W.2d 663, 669 (Tex. App.—Austin 1987, no writ).

In *Southwestern Bell Telephone* we reviewed whether a district court had jurisdiction under section 2001.038 to consider the validity of a Public Utility Commission rule. *Southwestern Bell Tel.*, 735 S.W.2d at 667. We described section 2001.038 as empowering district courts in Travis County to determine "'[t]he validity or applicability of any rule.'" *Id.* at 669. We further opined that "[t]he jurisdiction given in [section 2001.038] . . . to the Travis County district courts is an *original* jurisdiction not appellate jurisdiction." *Id.*[12]

Next, in *ARA Living Centers* we considered whether the district court had jurisdiction under section 2001.038 to hear ARA's challenge to the validity of agency rules promulgated by the Texas Department of Human Services and to the Department's attempts to apply these rules to ARA. *ARA Living Ctrs.*, 833 S.W.2d at 692-93. After disposing of the Department's arguments concerning the exhaustion of administrative remedies, primary jurisdiction, and governmental immunity doctrines, we concluded that section 2001.038 gave the district court jurisdiction to hear ARA's request for declaratory relief. *See id.* at 693.

Likewise, in *ARCO Oil & Gas* we discussed whether a district court had jurisdiction under section 2001.038 to hear a challenge to a Railroad Commission rule seeking declaratory relief. *ARCO Oil & Gas*, 876 S.W.2d at 477-78. Although our discussion focused on the doctrine of

---

[12] The provision restricts proper venue to Travis County district courts. *See* Tex. Gov't Code Ann. § 2001.038(b) (West 2000).

primary jurisdiction, we also held that in the absence of that doctrine, section 2001.038 conferred jurisdiction on the district court. *See id.* at 479. Most recently, in *Amusement & Music Operators, Inc.*, we reiterated that section 2001.038 is a valid statutory basis for conferring jurisdiction when the validity or application of an agency rule is challenged. *Amusement & Music Operators, Inc.*, 997 S.W.2d at 655-56, 659.

The parties urge us to decide whether the Legislature has created a school bond allocation system open to "all comers," as the Board and Pecos defendants contend, or a closed system, as appellees argue. We decline to examine the merits of this action until the trial court renders a judgment. Accordingly, we limit our discussion to a review of whether appellees satisfy the requirements of section 2001.038.

To establish jurisdiction under section 2001.038, a matter must concern the "validity or applicability of a rule," which "interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West 2000). Appellants contend that this suit is not a rule challenge but rather an attempt to obtain a judicial review of an agency decision. To support their position that this suit deals with an agency decision, appellants rely on our opinions in *Southwest Airlines Co. v. Texas High-Speed Rail Authority* and *S.C. San Antonio, Inc. v. Texas Department of Human Services. Southwest Airlines v. Texas High-Speed Rail Auth.*, 863 S.W.2d 123, 124 (Tex. App.—Austin 1993, writ denied); *S.C. San Antonio, Inc. v. Texas Dep't of Human Servs.*, 891 S.W.2d 773, 774-75 (Tex. App.—Austin 1995, writ denied). However, *Southwest Airlines* and *S.C. San Antonio, Inc.* are inapposite to this case, because both cases involve judicial review of agency proceedings with formal decisions.

9

Here, the record reveals no similar evidence of an agency proceeding or hearing conducted by an agency examiner or an administrative law judge. Unlike the parties in *Southwest Airlines* and *S.C. San Antonio, Inc.*, the parties in this case have not engaged in discovery or received a final agency order or a formal agency decision. We find that this case does not present a question regarding an agency decision. Instead, we conclude the question before us concerns a challenge to the validity and applicability of a Board rule.

Appellants further contend that neither the Board's rules nor the Board's threatened application of its rules affect a legal right or privilege of the appellees. Appellants assert accurately that appellees' claim does not concern a constitutional or vested property right. Rather appellees allege that a statutory right is affected. In particular, appellees argue that the school loan allocation statute implicates a legal right or privilege. We agree.

Statutes create legal rights. *See Westerman v. Mims*, 227 S.W. 178, 184 (Tex. 1921) (acknowledging that statutes "deal with legal obligations or duties and legal rights"); *Gilmore v. Waples*, 188 S.W. 1037, 1041 (Tex. 1916) ("[T]he rights created and protected by a statute are legal, as distinguished from political, rights . . . ."). Once the Board accepted appellees' applications for a bond reservation, appellees became qualified issuers who should have been ranked according to the school loan allocation statute. This statute assigns priority rankings in reverse chronological order.

The Board concedes that "[w]ithout Pecos's application, North Texas would have received a reservation in the 2000 bond reservation process." In effect, rule 190.2(e) and the Board's application of that rule permitted a new issuer to receive the first priority ranking and deprived appellees of a legal right or privilege, namely, their statutory right to be ranked in reverse

10

chronological order during the bond reservation process. Rather than being ranked third, North Texas was ranked fourth due to Pecos's entry into the process. Similarly, Panhandle-Plains will advance only two rankings rather than three because of the entry of Pecos. We conclude that the Board's application of this rule satisfies section 2001.038, which requires the presence of interference or impairment, or a threat of interference or impairment, with a legal right or privilege of the appellees.

The Pecos defendants further argue that section 2001.038 is inapplicable because appellees have raised their challenge in an untimely manner. The Pecos defendants rely on dicta in our prior opinions to support this contention. *See Ford, Inc. v. Collins Ford, Inc.*, 912 S.W.2d 271, 275 (Tex. App.—Austin 1995, writ dism'd); *Rutherford Oil Corp. v. General Land Office*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ). We have stated previously that "[t]he purpose of the statute is to obtain a final declaration of a rule's validity *before* the rule is *applied*." *Ford, Inc.*, 912 S.W.2d at 275 (citing *Rutherford Oil Corp. v. General Land Office*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ)). *Rutherford Oil*, however, does not contain a timing requirement, and we have not been cited to any case that does.

Moreover, the plain language of section 2001.038 contemplates the use of this provision to challenge the validity and applicability of a rule. *See* Tex. Gov't Code Ann. § 2001.038(a) (West 2000). No express language in section 2001.038 imposes a timing limitation on invoking jurisdiction. *See id.*

**Sovereign Immunity**

11

The Board also argues that the doctrine of sovereign immunity prevents the district court from exercising jurisdiction. We have previously held that section 2001.038 is "an express waiver of governmental immunity from suit for an action that properly invokes that section." *ARA Living Ctrs.*, 833 S.W.2d at 693; *accord Amusement & Music Operators*, *Inc.*, 997 S.W.2d at 659. The statute specifically provides, "The State agency must be made a party to the action." Tex. Gov't Code Ann. § 2001.038(c) (West 2000). Accordingly, we reject the argument that sovereign immunity erects a jurisdictional bar and protects the Board from appellees' claims.

We hold that appellees' suit satisfies the requirements of section 2001.038 and that the district court properly exercised jurisdiction over this case. Accordingly, we overrule appellants' first issue regarding jurisdiction.

## Temporary Injunction

Appellants' remaining issues concern the issuance of the temporary injunction.[13] A review of a district court's grant of a temporary injunction is strictly limited to whether the court abused its discretion. *See Davis v. Huey*, 571 S.W.2d 859, 861-62 (Tex. 1978); *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). When a court misapplies the law or concludes that a probable right of recovery exists, which is not reasonably supported by the evidence, the court commits an abuse of discretion. *See Southwestern Bell Tel. Co.*, 526 S.W.2d at 528. In

---

[13] The Pecos defendants present the issue of whether the trial court erred when it permitted supplementation of the administrative record. However, because no argument or legal authority to support its position is provided in their brief, this complaint is waived. *See* Tex. R. App. P. 38.1(h); *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 827 (Tex. App.—Austin 1990, writ denied).

an interlocutory appeal from a temporary injunction, we do not review the merits. *See Davis*, 571 S.W.2d at 862; *Amusement & Music Operators, Inc.*, 997 S.W.2d at 657-58.

In a temporary injunction hearing, the sole question before the court is whether the applicant is entitled to preserve the status quo of the subject matter of the suit pending trial. *See Davis*, 571 S.W.2d at 862. Due to the limited purpose of such a hearing, a court may exercise broad discretion when deciding whether to issue a temporary injunction. *See LaFaucheur v. Williams*, 807 S.W.2d 20, 22 (Tex. App.—Austin 1991, no writ). We must determine whether the court's decision was "'arbitrary, unreasonable, and without reference to guiding principles.'" *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). We may not substitute our judgment for that of the trial court because the evidence at a preliminary hearing may not be the same as that developed during a full trial on the merits. *See Davis*, 571 S.W.2d at 862 (relying on *Houston Belt & Terminal Ry. Co. v. Texas & New Orleans R.R. Co.*, 289 S.W.2d 217 (Tex. 1956), and *Transport Co. v. Robertson Transps.*, 261 S.W.2d 549 (Tex. 1953)).

Appellants contend that the temporary injunction was improper because the Board acted within the scope of its authority. Appellants also assert that during this process, every application was properly considered and ranked by priority. As stated previously, we refrain from considering the merits of this case.

In addition, the Pecos defendants allege that the temporary injunction is improper because appellees did not plead a cause of action and did not demonstrate a probable right of recovery or a probable injury. Appellants further claim that the district court order and our order

issuing an injunction are defective because the scope of each order exceeds the pleadings and the record.

To grant a temporary injunction, a trial court must find that a plaintiff pleaded a cause of action and asserted a probable right to recover as well as a probable injury. *See Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *Amusement & Music Operators, Inc.*, 997 S.W.2d at 657 (citing *Omniphone, Inc. v. Southwestern Bell Tel.*, 742 S.W.2d 523 (Tex. App.—Austin 1987, no writ)). We first consider whether appellees pleaded a cause of action. In this case, appellees seek declaratory relief on three grounds: (1) the Board violated section 1372.029 of the Texas Government Code and rule 190.3(g)(5), which prevent the Board from accepting applications from more than one project located at, or related to, a business operation at a program site in any given year; (2) Pecos and Brazos constitute a single business entity under an alter ego or single business theory; and (3) the Board promulgated an invalid rule when it interpreted the school loan allocation statute in rule 190.2(e). We have previously found that a suit seeking a declaratory judgment pursuant to section 2001.038 satisfies the prerequisite that a valid cause of action be asserted. *See Amusement & Music Operators, Inc.*, 997 S.W.2d at 657. Therefore, we find appellees' requests for declaratory relief comply with this preliminary requirement.[14]

We next consider whether these causes of action entitle appellees to relief. To determine whether a probable right of recovery exists, we must examine rule 190.2(e) in light of the

---

[14] Appellees further allege in their petition that because Pecos and Brazos are a single business enterprise, the Board violated Texas Government Code section 1372.029 and rule 190.3(g)(5) of the Texas Administrative Code when it accepted applications from both entities. Because of our disposition of appellants' first issue, we need not decide this issue.

14

school loan allocation statute. The Board is authorized to enact administrative rules "relating to applications for review, the review process and reporting requirements." *See* Tex. Gov't Code Ann. § 1231.022(1) (West 2000). The Board has promulgated rule 190.2(e), which reads as follows:

> Reservations shall be granted in reverse calendar year order of the most recent closing of qualified student loan bonds by each issuer of qualified student loan bonds . . . with the most recent closing being the last to receive a reservation and ***with those higher education authorities that have never received a reservation for student loan bonds being the first to receive a reservation***, and, in the case of closings occurring on the same date, reservations shall be granted in an order determined by the board by lot.

34 Tex. Admin. Code § 190.2(e) (2000) (emphasis added). By its terms, rule 190.2(e) addresses the priority ranking of new issuers.

We note, however, that the "new issuer" language of rule 190.2(e) resembles the Board's mortgage allocation statute[15] more closely than the school loan allocation statute. The mortgage allocation statute specifically provides for new issuers as follows:

> (c) Within the group of issuers given priority and within the group not given priority, the board shall grant reservations in reverse order of the date of the most recent closing of qualified mortgage bonds applicable to the housing finance corporations, ***with a corporation that has never received a reservation for mortgage revenue bonds being the first to receive a reservation*** and the corporation that had the most recent closing being the last to receive a reservation. If closings occurred on the same date, the board shall grant reservations in the order determined by the board by lot.

---

[15] Tex. Gov't Code Ann. § 1372.032(c) (West 2000). For convenience, we refer to section 1372.032(c) as the "mortgage allocation statute."

Tex. Gov't Code Ann. § 1372.032(c) (West 2000) (emphasis added).  In contrast, the school loan

allocation statute states the following:

> If, on or before October 20, more than one issuer authorized by Section 53.47, Education Code, to issue qualified student loan bonds applies for a reservation of the state ceiling for qualified student loan bonds for the next program year, *the board shall grant reservations in that category in reverse order of the date of the most recent closing of qualified student loan bonds by each issuer*.  The issuer that had the most recent closing shall be the last to receive a reservation.

*Id.* § 1372.033(a) (emphasis added).  Unlike rule 190.2(e) and the mortgage allocation statute, the

plain language of  the school loan allocation statute does not address the priority ranking of new

issuers.  The Board implemented rule 190.2(e) with respect to a new issuer for the first time in

October 1999.  We conclude that the Board has not shown the existence of a "longstanding"

administrative policy and therefore, the theory of legislative acceptance or ratification may not apply

to these circumstances.  We find the evidence sufficient to determine that the district court reasonably

concluded that a probable right to recover exists.

The final requirement to support a temporary injunction, probable injury, encompasses

three factors: imminent harm, irreparable injury, and no adequate remedy at law for damages.  *See*

*Transport Co.*, 261 S.W.2d at 553.  The record reflects that the Board threatened to apply rule

190.2(e).  As a result, the Board placed Pecos in the first priority position to receive a reservation.

This assignment of priority relegated North Texas to the fourth priority ranking.  The Board's

placement of Pecos in the first priority position also prevented Panhandle-Plains from rotating up the

priority rankings as it otherwise would have.  We find that the record could reasonably support the

district court's determination that appellees faced imminent harm.

16

Furthermore, the record indicates that the Board intends to continue to apply its rules during subsequent bond reservation processes. Thus, neither North Texas nor Panhandle-Plains is able to discern when it may receive a bond reservation. The record reveals that bond reservations are essential to appellees' ability to conduct business as well as provide services to its clients. Also, the threatened inability to advance in priority ranking results in irreparable injury to appellees. We conclude that the district court could have reasonably found that the record supported a finding of irreparable injury.

Lastly, we review whether appellees had an adequate remedy at law available that would render the grant of injunctive relief improper. When a remedy is complete, practical, and efficient to the prompt administration of justice, it is viewed as adequate. *See Bank of Southwest N.A., Brownsville v. Harlingen Nat'l Bank*, 662 S.W.2d 113, 116 (Tex. App.—Corpus Christi 1983, no writ); *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ). Damages have been found inadequate when difficulty arises in calculating damages or if an award arrives too late. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *Bank of Southwest*, 662 S.W.2d at 116. The loss of a bond reservation or ranking is difficult to quantify. Once a bond reservation is issued, the bond amounts may not be recouped. We find no clear abuse of discretion in the district court's ruling. Appellants' second issue is overruled.

By its terms, the temporary injunction restrains the Pecos defendants from issuing a bond reservation. At oral argument, appellees conceded that no reason exists for the continued enforcement of either temporary injunction against the Pecos defendants. Therefore, we modify the

17

district court's temporary injunction and our order and writ of injunction dated March 6, 2000 to exclude the Pecos defendants.

Although no longer enjoined, the Pecos defendants draw our attention to a clerical error in the district court order and our order of March 6, 2000. Both orders refer to the "Fall 2000/Spring 2001 bond review reservation process," which constitutes an inaccurate description. "When the record reflects a clerical variance between a judgment announced in open court and the judgment eventually signed by the trial judge, an appellate court can modify the judgment to correct the mistake." *McLendon v. McLendon*, 847 S.W.2d 601, 610 (Tex. App.—Dallas 1992, writ denied); *cf.* Tex. R. App. P. 43.2. In this case, the judge announced his judgment in open court and considered all objections raised to the form submitted by appellees' counsel. Neither appellants nor appellees referenced the "Fall 2000/Spring 2001 bond review reservation process" in their pleadings or at the hearing. Rather, each party restricted its arguments to the most recent Board bond reservation process in which applications were accepted in Fall 1999, and the Board anticipated issuing reservations in Spring 2000. Because these discrepancies are clerical, we modify the district court's temporary injunction to cover the "2000 Texas Bond Review Board school loan bond reservation process," the time frame contemplated by all parties.

Furthermore, on March 6, 2000, in response to an emergency motion for a temporary injunction filed by appellees to halt the Board's threatened issuance of a bond reservation, we issued an order and an accompanying writ of injunction. Our order also made reference to the "Fall 2000/Spring 2001 bond review reservation process." Therefore, we also modify our order of March 6, 2000 to refer to the "2000 Texas Bond Review Board school loan bond reservation process."

**CONCLUSION**

In light of our holding that the district court had jurisdiction to consider appellees' claims under section 2001.038 of the APA, we affirm the district court's order denying appellants' pleas to the jurisdiction. Because we hold that the district court did not abuse its discretion in granting the temporary injunction, we affirm the temporary injunction as modified.

 

_____

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Modified and, as Modified, Affirmed

Filed:   October 19, 2000

Do Not Publish